STATE OF NORTH CAROLINA v. BOBBY RAYE MYERS

No. 97

(Filed 1 April 1980)

1. **Criminal Law § 71— victim "afraid" husband would kill her—shorthand statement of fact**

   A witness's testimony that a murder victim was "afraid " her husband would kill her was competent as a shorthand description of the victim's emotional state based on the witness's observations of the victim's demeanor.

2. **Criminal Law § 71— defendant's "complete control" of gun—shorthand statement of fact**

   A witness's testimony that defendant had "complete control" of a gun at the time he came up over the front seat of a car to shoot his wife was competent as a shorthand description of a sequence of movements observed by the witness while standing thirty feet from the front of the car in which the shooting occurred.

3. **Homicide § 17.2— threats to kill deceased—effect of remoteness**

   A witness's testimony that defendant on earlier occasions had threatened to kill deceased was not inadmissible because the threats were made some twelve to fifteen months before deceased was killed, since remoteness goes only to the weight of such testimony.

4. **Bills of Discovery § 6; Criminal Law § 87— prosecutor's statement naming State's witnesses—testimony by witnesses not named**

   In a murder prosecution in which the prosecutor, at defendant's request, stated in the presence of the potential jurors the names of all persons the State would call to testify, the trial court did not err in permitting two witnesses whose names had not been so mentioned to testify for the State where the *voir dire* examination conducted by the court showed that the jurors did not know either of the witnesses the State had failed to name and that the prosecutor did not act in bad faith and defendant was not prejudiced thereby.

5. **Homicide § 17.1— husband's continuing abuse of wife—competency**

   In a prosecution of defendant for the first degree murder of his wife, testimony by two of defendant's neighbors concerning defendant's continuing verbal abuse of his wife was admissible as bearing on intent, malice, motive, premeditation, and deliberation on the part of defendant.

6. **Homicide § 4.3— premeditation defined**

   Premeditation means thought beforehand for some length of time, however short, but no particular time is required for the mental process of premeditation.

### 7. Homicide § 4.3— deliberation defined

Deliberation does not require brooding or reflection for any appreciable length of time, but imports the execution of an intent to kill in a cool state of blood without legal provocation, and in furtherance of a fixed design.

### 8. Homicide § 4.3— premeditation and deliberation

An unlawful killing is deliberate and premeditated if done pursuant to a fixed design to kill, notwithstanding defendant was angry or in an emotional state at the time, unless such anger or emotion was such as to disturb the faculties and reason.

### 9. Homicide § 18— premeditation and deliberation—circumstantial evidence

Since premeditation and deliberation refer to processes of the mind, they must almost always be proved, if at all, by circumstantial evidence, and among circumstances which may tend to prove premeditation and deliberation are (1) want of provocation on the part of deceased; (2) conduct and statements of the defendant both before and after the killing; (3) threats made against deceased by the defendant; and (4) ill will or previous difficulty between the parties.

### 10. Homicide § 21.5— first degree murder—sufficient evidence of malice, premeditation and deliberation

There was sufficient evidence of intent, premeditation and deliberation and malice to sustain defendant's conviction of first degree murder of his wife where the evidence tended to show that defendant expressed extreme hatred toward his wife and subjected her to continuing verbal and physical abuse during the months prior to her death; during the previous year he had threatened to a co-worker that he was going to kill his wife "before it is over with"; defendant's wife left defendant and was staying at her father's house; defendant purchased a shotgun and shells on the morning of the killing; defendant, brandishing his gun and wearing an ammunition belt full of shotgun shells, confronted his wife as she left her place of work and told her, "Let's go. I told you what I would do if you left the next time."; defendant marched his wife to his car and sat in the back seat while she began to drive the car slowly; two police cars blocked the path of the car and caused it to stop; defendant's wife grabbed the bun barrel and pointed it toward the car ceiling; and defendant pushed his wife down into the front seat, rose in the back seat and regained complete control of the gun, pointed it into the front seat, and fired the shots which killed his wife.

### 11. Criminal Law § 102.10— first degree murder case—prosecutor's remarks not improper

In a prosecution of defendant for first degree murder of his wife, remarks made by the prosecutor during his jury argument concerning the demeanor of defendant when he looked at pictures of his wife's body during the trial, defendant's previous conviction of involuntary manslaughter for the death of his wife's first husband, who was the father of his wife's nine year old child, and defendant's attitude and conduct toward his wife were rooted in the evidence before the jury and were within the bounds of permissible argument.

APPEAL by defendant from judgment of *Albright, J.*, 9 April 1979 Session, SURRY Superior Court. This case was docketed and argued as Case No. 118 at the Fall Term 1979.

Defendant was tried upon a bill of indictment, proper in form, charging him with the first degree murder of Jan Charlsie Myers on 31 August 1978.

The State offered evidence tending to show that on 24 August 1978 defendant was estranged from his wife, Charlsie Myers, who was staying at her father's house. On the afternoon of 28 August 1978 defendant drove a white Dodge Dart into the parking lot of the Proctor-Silex plant where his wife was leaving work with Mr. and Mrs. Hawks. That morning defendant had bought a double barrel twelve gauge shotgun and shells from Sky City. He took the loaded shotgun with him to the parking lot. He was also wearing an ammunition belt which was full of shotgun shells. When he saw his wife defendant brandished his gun, walked rapidly toward her and said: "Get your damn pocketbook. Let's go. I told you what I would do to you if you left the next time." Holding the gun, defendant marched his wife to the car. She sat in the driver's seat. He sat in the center of the back seat and pointed the shotgun at his wife's head. The wife began driving the car very slowly. The car was forced to a halt by police, the wife grabbed the gun barrel, but defendant regained control of the gun and fired. Defendant was immediately shot by the police but survived. His wife died three days later.

There was evidence that defendant didn't get along with his wife, that he had verbally and physically abused her, and that he had previously threatened to kill her.

Defendant testified that he had been previously convicted of involuntary manslaughter for the death of his wife's first husband and had received a suspended sentence. He also testified that the shotgun had been bought for squirrel hunting and had been fired in the woods several times that morning; that he didn't realize he had the ammunition belt on because he was accustomed to wearing heavy pouches in his work; that the gun discharged accidentally; that he loved his wife and was trying to work things out on the day of her death.

The jury found defendant guilty of murder in the first degree and recommended life imprisonment. Defendant appeals to this Court from judgment imposing life imprisonment.

Additional evidence necessary to an understanding of various assignments of error will be narrated in the opinion.

*Rufus L. Edmisten, Attorney General, by Thomas B. Wood, Assistant Attorney General, for the State.*

*Charles M. Neaves, attorney for defendant appellant.*

HUSKINS, Justice.

State's witness Ruth Watson testified that Charlsie Myers stayed at her father's house from 24 August 1978 to 28 August 1978, the day the shooting occurred; that on Friday morning, 25 August, she picked up Charlsie at her father's house and gave her a ride to work; that she visited with Charlsie on Saturday and Sunday; that on Monday morning, 28 August, she gave Charlsie a ride to work; that Charlsie's father had hidden her car at the Leonard Aluminum plant; that Charlsie had asked for a ride because she was afraid defendant would kill her; that Charlsie had hidden her car because she was afraid defendant would follow her and kill her. Ruth Watson was Charlsie's mother and was divorced from Charlsie's father.

[1] Defendant contends the trial court erred in permitting Mrs. Watson to testify that Charlsie Myers was "afraid" her husband would kill her. This assignment is without merit. Mrs. Watson's testimony indicates that she had numerous opportunities to observe firsthand Charlsie Myers' demeanor shortly before the shooting occurred. Her testimony that Charlsie feared for her life is but a shorthand description of Charlsie's emotional state based on her observations of Charlsie's demeanor. "The emotion displayed by a person on a given occasion is a proper subject for opinion testimony by a non-expert witness." *State v. Looney,* 294 N.C. 1, 240 S.E. 2d 612 (1978). *Accord,* 1 Stansbury, N.C. Evidence, § 129 at p. 413 (Brandis Rev. 1973). Defendant's first assignment is overruled.

[2] Similarly, defendant contends that State's witness Garnett Steele should not have been permitted to testify that defendant

had "complete control" of the gun at the time he came up over the front seat of the car to shoot his wife. This assignment is likewise without merit. The testimony objected to is but a shorthand description of a sequence of movements observed by Mr. Steele while standing thirty feet from the front of the car in which the shooting occurred. Such shorthand statements are admissible when, as here, "the facts on which the opinion or conclusion is based cannot be so described that the jury will understand them sufficiently to be able to draw their own inferences." 1 Stansbury, *supra*, § 125, and cases cited therein. Defendant's third assignment is overruled.

[3] Defendant contends the court erred in allowing Mrs. Annie Harrell to testify that on earlier occasions the defendant had threatened to kill deceased. Mrs. Harrell testified that during the summer of 1977 she worked with defendant in a knitting mill and twice during that time defendant told her he was going to kill deceased. Defendant argues that the threat is inadmissible because it was made some twelve to fifteen months before the killing. This contention is without merit. "In homicide cases, threats by the accused have always been freely admitted either to identify him as the killer or to disprove accident or justification or to show premeditation and deliberation." 1 Stansbury, supra, § 162a, and cases cited therein. Moreover, such threats are not rendered inadmissible merely because they were made a considerable time before the killing. *See, e.g., State v. Bright*, 215 N.C. 537, 2 S.E. 2d 541 (1939) (two years); *State v. Payne*, 213 N.C. 719, 197 S.E. 573 (1938) (three or four years). "Ordinarily, remoteness in time in the making of a threat otherwise admissible does not render it incompetent as evidence, but only goes to its weight and effect." *State v. Shook*, 224 N.C. 728, 32 S.E. 2d 329 (1944). Defendant's second assignment of error is overruled.

[4] During selection of the jury, counsel for defendant asked the prosecutor to state, in the presence of the potential jurors, the names of all persons the State would call to testify. The prosecutor complied with this request. At trial, however, three witnesses whose names had not been mentioned to potential jurors during jury selection were permitted to testify for the State. Defendant contends the trial court erred in permitting two of these witnesses, Ronald Dean Sawyer and Mrs. Louise Sawyer, to testify.

In North Carolina defendant does not have the right to discover in advance of trial the names and addresses of the State's prospective witnesses. *State v. Dollar*, 292 N.C. 344, 233 S.E. 2d 521 (1977); *State v. Smith*, 291 N.C. 505, 231 S.E. 2d 663 (1977). However, where the State voluntarily furnishes names of prospective witnesses and subsequently seeks to call a witness not previously named, the court will look to see whether the district attorney acted in bad faith and whether defendant was prejudiced thereby. *State v. Smith*, supra. In the instant case, the trial judge conducted a voir dire examination of the jury to determine whether the district attorney had acted in bad faith. The voir dire established that the jurors did not know either of the witnesses the State had failed to name during jury selection. Such inquiry negated the possibility that the State was surreptitiously attempting to place before the jury witnesses who were friendly or influential with the jurors. In sum, the trial court's inquiry satisfied the requirements of *State v. Smith*, supra. Bad faith by the omission of names was not shown. Defendant's fourth assignment is overruled.

[5] Defendant contends the trial court erred in permitting Ronald Dean Sawyer, a thirteen-year-old, and Mrs. Louise Sawyer, his mother, to testify as to defendant's treatment of his wife in the spring and summer of 1978. The Sawyers were neighbors of defendant at that time. While visiting with defendant's children, the Sawyer boy saw defendant pull his wife's hair. Mrs. Sawyer testified that defendant would never let his wife out of the house "and didn't want her to do nothing with anybody." On several occasions Mrs. Sawyer heard defendant order his wife to go upstairs, remove her clothes, and stay in bed. On one occasion, while Mrs. Myers was picking beans in Mrs. Sawyer's backyard at five or six in the afternoon, defendant ordered her to "get the hell up here and get your clothes off." Defendant would make his wife stay in bed most of the time and would not let her sleep. On other occasions, defendant would speak to his wife as if she were a child and order her "to sit down in the chair and sit there like a youngun and be smart." This evidence of defendant's continuing verbal and physical abuse of his wife was admissible as bearing "on intent, malice, motive, premeditation, and deliberation on the part of [defendant]." *State v. Gales*, 240 N.C. 319, 82 S.E. 2d 80 (1954). *Accord, State v. Moore*, 275 N.C. 198, 166 S.E.

2d 652 (1969), and cases cited therein. Accordingly, defendant's fifth assignment is overruled.

Defendant assigns as error the trial court's denial of his motion for judgment as of nonsuit at the close of all the evidence. In effect, defendant contends there was not sufficient evidence of intent, premeditation, deliberation, and malice to sustain a conviction for first degree murder.

Murder in the first degree is the unlawful killing of a human being with malice, premeditation, and deliberation. *State v. Fleming,* 296 N.C. 559, 251 S.E. 2d 430 (1979); *State v. Moore, supra.*

"Malice is not only hatred, ill-will, or spite, as it is ordinarily understood—to be sure that is malice—but it also means that condition of mind which prompts a person to take the life of another intentionally without just cause, excuse, or justification." *State v. Benson,* 183 N.C. 795, 111 S.E. 869 (1922). *Accord, State v. Moore, supra.* "The intentional use of a deadly weapon proximately causing death gives rise to the presumption that (1) the killing was unlawful, and (2) the killing was done with malice." *State v. Bush,* 289 N.C. 159, 221 S.E. 2d 333, *death sentence vacated,* 429 U.S. 809 (1976).

[6-9] Premeditation means thought over beforehand for some length of time, however short, but no particular time is required for the mental process of premeditation. *State v. Robbins,* 275 N.C. 537, 169 S.E. 2d 858 (1969). Deliberation does not require brooding or reflection for any appreciable length of time, but imports the execution of an intent to kill in a cool state of blood without legal provocation, and in furtherance of a fixed design. *State v. Britt,* 285 N.C. 256, 204 S.E. 2d 817 (1974). The requirement of "cool state of blood" does not mean that defendant must be calm or tranquil. An unlawful killing is deliberate and premeditated if done pursuant to a fixed design to kill, notwithstanding that defendant was angry or in an emotional state at the time, unless such anger or emotion was such as to disturb the faculties and reason. *Id.* Since premeditation and deliberation refer to processes of the mind, they must almost always be proved, if at all, by circumstantial evidence. *State v. Potter,* 295 N.C. 126, 244 S.E. 2d 397 (1978). Among circumstances which may tend to prove premeditation and deliberation are: (1) want of provocation on the part of deceased; (2) conduct and statements of

the defendant both before and after the killing; (3) threats made against the deceased by the defendant; and (4) ill will or previous difficulty between the parties. *State v. Potter, supra; State v. Fountain*, 282 N.C. 58, 191 S.E. 2d 674 (1972).

[10] Taken in its most favorable light, and given every reasonable inference to be drawn therefrom, the State's evidence on the elements of malice, premeditation and deliberation tends to show that defendant expressed extreme hatred toward his wife, the deceased, during the spring and summer of 1978. During that time he subjected her to continuing verbal and physical abuse. The previous summer he had twice threatened to a co-worker that he was going to kill his wife "before it is over with." By 24 August 1978 the deceased, Charlsie Myers, had left defendant and was staying at her father's house. While staying there, Charlsie arranged to have her car hidden and to be driven to work by her mother. Charlsie was afraid her husband would follow her and kill her. On the morning of 28 August 1978 Charlsie was dropped off at the Proctor-Silex plant by her mother. At ten o'clock that morning defendant went to the Sky City store and began looking at shotguns. Within ten minutes he decided to purchase a double barrel twelve gauge shotgun. A box of shells was thrown in with the purchase. By three o'clock that afternoon, defendant had driven to the Proctor-Silex parking lot. At four-thirty that afternoon Charlsie Myers left work and walked toward the parking lot with some friends who were giving her a ride home. Brandishing his gun and wearing an ammunition belt full of shotgun shells, defendant walked rapidly toward his wife and said "Get your damn pocketbook. Let's go. I told you what I would do if you left the next time." Holding the gun, defendant marched Charlsie toward his car. Charlsie sat in the driver's seat. Defendant sat in the center of the back seat and pointed the shotgun at Charlsie's head. Charlsie began to drive the car very slowly. Two police cars blocked the path of the car and caused it to come to a halt. Soon thereafter, Charlsie Myers grabbed the gun barrel and pointed it toward the ceiling of the car. Defendant pushed Charlsie down into the front seat with his left arm. He then rose in the back seat, regained complete control of the gun, pointed it into the front seat, and fired the shots which killed his wife.

The foregoing constitutes substantial evidence from which a jury could determine that the unlawful killing of Charlsie Myers was committed with malice, premeditation and deliberation as those terms are defined in our cases. This evidence is sufficient to carry the case to the jury on the elements of malice, premeditation and deliberation. Accordingly, defendant's motion for nonsuit was properly denied. *See generally, State v. Jolly*, 297 N.C. 121, 254 S.E. 2d 1 (1979) (stating guiding principles applicable on a motion for judgment as of nonsuit). Defendant's seventh assignment is overruled.

[11] Defendant contends the following remarks of the district attorney resulted in prejudicial error:

"You will recall that as the State was required to do, I carried the pictures that I passed among you to his counsel to observe and you observed that the defendant observed those pictures too and I watched specifically to see his reaction as those pictures of the blood were handed to him and then finally the three pictures of his wife, the woman that he said that he loved, with a gaping hole in her head. He didn't flinch. Didn't bat an eye. I don't know if you were watching him but no remorse and that I contend to you, ladies and gentlemen of the jury, is the first among many things that the State asks that you consider on the question of premeditation and deliberation."

\* \* \* \*

"He has killed Tammy's daddy. He killed her mother. It was no accident and that little girl, sometime on about Labor Day, September 3rd or 4th, had to follow that casket to the grave. Nine years old, daddy gone and mother dead at his hands. And of what did that little girl think as she followed that casket to the grave? Undertaker, undertaker, please drive slow, for that body you are hauling, Lord, I hate to see it go. Two people dead at his hands."

\* \* \* \*

"If sympathy were to enter into it then I would nominate Charlsie Myers and her child and the others who have suffered as a result of this horrible crime but sympathy does not enter into it. Not at all."

\*    \*    \*    \*

"I argue to you, ladies and gentlemen of the jury, he was of the same attitude on that occasion and state of mind that has prompted him from the very beginning of their marriage and the same attitude that prompted him when he shot down her first husband. Not a word of remorse and not a sign of it here in the courtroom during this trial."

"It is the duty of the prosecuting attorney to present the State's case with earnestness and vigor and to use every legitimate means to bring about a just conviction. . . . Counsel for both sides are entitled to argue to the jury the law and the facts in evidence and all reasonable inferences to be drawn therefrom." *State v. Monk,* 286 N.C. 509, 212 S.E. 2d 125 (1975). *Accord, State v. Thompson,* 293 N.C. 713, 239 S.E. 2d 465 (1977). Whether counsel has abused the wide latitude accorded him in the argument of hotly contested cases is a matter ordinarily left to the sound discretion of the trial judge, and we will not review the exercise of this discretion unless there be such gross impropriety in the argument as would be likely to influence the verdict of the jury. *State v. Covington,* 290 N.C. 313, 226 S.E. 2d 629 (1976).

Due consideration of the challenged remarks leads us to conclude they are rooted in the evidence before the jury and are within the bounds of permissible argument. The first challenged remark relates to the demeanor of defendant, which was before the jury at all times. The second and third remarks relate to defendant's testimony that he had been previously convicted of involuntary manslaughter for the death of his wife's first husband, who was "Tammy's daddy," and that "Tammy" was the child of his wife by her first husband. The fourth remark adverts to the substantial evidence of defendant's attitude and conduct toward his wife. In sum, the challenged remarks vigorously and zealously discuss matters which were in evidence before the jury. There are no gross improprieties in the argument of this capital case such as would warrant a new trial. We find no prejudicial error in the argument of the district attorney. Defendant's eighth and ninth assignments are overruled.

We have carefully considered the remaining assignments of error brought forward by defendant and find them to be without merit. Further discussion will serve no useful purpose.

No prejudicial error having been shown, the judgment of the trial court must be upheld.

No error.