STATE OF NORTH CAROLINA v. DONNIE RAY WELCH

No. 112A84

(Filed 6 May 1986)

1. **Constitutional Law § 72; Criminal Law § 74.2— codefendant's statements implicating defendant—testimony by codefendant's wife—admission as harmless error**

   Even if the admission of testimony by a codefendant's wife about extra-judicial statements the codefendant made to her regarding defendant's plans to commit a robbery violated defendant's constitutional right to confrontation under the *Bruton* rule and defendant's rights under N.C.G.S. § 15A-927(c)(1), such error was harmless beyond a reasonable doubt where defendant himself testified that he did in fact plan and attempt to commit the robbery in question, and where testimony by the codefendant's wife concerning her husband's extrajudicial statements inculpating defendant added nothing of significance to defendant's own testimony.

2. **Criminal Law § 55; Searches and Seizures § 4— nontestimonial identification order—no authority for defendant in custody**

   The trial court was not authorized by Art. 14 of N.C.G.S. Ch. 15A to issue a nontestimonial identification order to obtain a blood sample from a defendant who was in custody at the time the order was issued, since the statute applies only to suspects and accused persons before arrest and persons formally charged and arrested who have been released from custody pending trial.

3. **Criminal Law § 84; Searches and Seizures § 4— blood sample drawn without warrant—invalid nontestimonial identification order—violation of constitutional rights—sample admissible under good faith exception**

   Defendant's right under the Fourth and Fourteenth Amendments to be free from unreasonable searches and seizures was violated when a sample of his blood was drawn without a search warrant where defendant had been indicted and was in custody in the county jail and exigent circumstances did not exist to justify the warrantless search. However, the trial court was not required to exclude the blood sample from evidence under the good faith exception to the exclusionary rule where officers acted in reasonable reliance upon a nontestimonial identification order issued by a superior court judge but subsequently found invalid.

4. **Homicide § 21.5— first degree murder—premeditation and deliberation—sufficiency of evidence**

   There was substantial evidence from which the jury could determine that defendant intentionally killed the victim with premeditation and deliberation so as to support his conviction of first degree murder where the evidence tended to show that defendant armed himself with a borrowed shotgun and planned to rob a certain store; defendant had ample time before the robbery to make sure the shotgun was loaded and operational; defendant burst into the store, pointed the shotgun at the victim and a cashier, warned them not to move, and demanded money; and defendant cocked the gun and shot the victim when he moved toward a gun hidden near the cash register.

   Justice BILLINGS concurring.

   Justice EXUM concurring.

APPEAL by the defendant from judgments entered on 12 December 1983 by *Beaty, J.,* in the Superior Court, GASTON County.

The defendant was convicted of attempted robbery with a dangerous weapon and first degree murder. He received a sentence of imprisonment for twenty years for the attempted robbery conviction and a life sentence for the first degree murder conviction. The defendant appealed the murder conviction to the Supreme Court as a matter of right under N.C.G.S. § 7A-27(a). On 23 April 1985, the Supreme Court allowed the defendant's motion to bypass the Court of Appeals on his appeal of the attempted robbery case. Heard in the Supreme Court 20 November 1985.

*Lacy H. Thornburg, Attorney General, by Charles M. Hensey, Assistant Attorney General, for the State.*

*Ann B. Petersen for the defendant appellant.*

MITCHELL, Justice.

The defendant brings forward assignments of error in which he contends (1) that joinder of his case with that of his codefendant Allison for trial deprived the defendant of his right to confrontation and to a fair trial, (2) that a nontestimonial identification order was unlawfully issued, (3) that taking a sample of defendant's blood without a search warrant violated rights guaranteed by the fourth amendment, (4) that the evidence presented was insufficient to support his conviction, and (5) that "death qualifying" the jury was a violation of his right to due process and to a trial by jury. We conclude that the defendant received a fair trial free of reversible error.

The State's evidence tended to show that on 30 June 1983, the defendant Donnie Ray Welch and his codefendant Joe Allison, an informant for the Gaston County Police Department, drove to Clemmer's Superette which they intended to rob. The defendant had obtained a sawed-off shotgun from William Caudell before the robbery. Caudell testified that he told the defendant that the shotgun was not loaded and would not fire.

Sheila Mullins testified that on 30 June 1983, at about 10:00 p.m., she was straightening up the counter in Clemmer's Superette while Paul Clemmer was at the far end of the counter. A man with a stocking over his head and carrying a gun burst through the door. The man pointed the gun at them and told them to be quiet and to give him all the money. Mullins bent down to get a money bag she thought was under the counter. The man ordered her to get up. As Mullins raised her hands, Clemmer walked toward the cash register with his hands outstretched. When Clemmer reached for a gun that was hidden beside the cash register, the robber cocked and pointed the gun at him and told him to stop. Mullins ducked and ran down the aisle to the back of the store. As she was running, she heard a gunshot and then a moan. The resulting wound to Clemmer's midsection proved fatal.

Joe Allison's wife Barbara had informed the police that the defendant Donnie Ray Welch planned to rob a store that night. A car that was seen at Clemmer's Superette was later stopped by the police. Allison was driving the car with the defendant as a passenger. Before the car was stopped, the defendant leaned out

of the car and threw an object into the weeds on the side of the road. A sawed-off shotgun was later found about ten feet from the road. The defendant and his codefendant Allison were taken into custody. Spots of human blood were found on the jeans that the defendant Welch was wearing. The State's forensic pathologist testified that the blood on the defendant's jeans was consistent with Clemmer's blood type and not consistent with the blood types of the defendant Welch or the codefendant Allison.

The State filed a written motion to consolidate the charges against the defendant for trial with those against Allison. The defendant objected to the consolidation on the ground that testimony about extrajudicial statements which had been made by Allison would implicate the defendant. The State asserted that it would not offer into evidence any inculpatory statements made by Allison. The trial court granted the State's motion to consolidate.

At trial, the codefendant's wife, Barbara Allison, said that the defendant came to the Allison home around 6:00 p.m. on 30 June 1983. She testified that, out of the defendant's presence, Allison told her on that occasion that the defendant wanted to commit a robbery in a store at the edge of Belmont around 10:00 p.m. The defendant objected and the trial court instructed the jury not to consider that testimony against the defendant.

Barbara Allison also testified that the defendant requested a pair of stockings which he later cut. She said that he stated that they had to pick up a gun and get to the store by 10:00 p.m. Joe Allison and the defendant left in Allison's automobile. Barbara Allison testified that she then talked to Detective Ivey and told him about the plans for the robbery. The defendant objected to the testimony regarding Barbara Allison's conversation with Detective Ivey.

At the close of the State's evidence, the defendant filed written motions for severance and for mistrial under N.C.G.S. § 15A-927(c)(2)(b). The motions were denied.

The defendant testified that he did plan and had attempted to commit the robbery at Clemmer's Superette. He said that he had not intended to shoot Mr. Clemmer and had not realized that the gun was loaded. At the close of all evidence, the defendant renewed his previous motions which were again denied by the trial court. The codefendant Allison did not present any evidence.

[1]  By his first assignment of error, the defendant contends that the joinder of his case for trial with Allison's resulted in the violation of the dictates of *Bruton v. United States*, 391 U.S. 123, 20 L.Ed. 2d 476 (1968) and N.C.G.S. § 15A-927(c)(1), and that the trial court committed prejudicial error in denying his motions for severance and a mistrial. In *Bruton*, the Supreme Court held that in joint trials, limiting instructions directing the jury to disregard extrajudicial statements of a non-testifying defendant to the extent they tend to inculpate a nondeclarant codefendant are inadequate protection of that codefendant's sixth amendment right to confrontation. The result is that in joint trials such an extrajudicial statement must be excluded unless the portions that implicate the nondeclarant codefendant can be deleted. If deletion of those portions is not possible, the State must choose between not admitting the statement or trying the defendants separately. *State v. Fox*, 274 N.C. 277, 291, 163 S.E. 2d 492, 502 (1968). "If the declarant can be cross-examined, a codefendant has been accorded his right to confrontation." *Id.* If the inculpatory statement for any reason is admissible against the non-declarant codefendant, the *Bruton* choice does not apply. *State v. Hardy*, 293 N.C. 105, 118, 235 S.E. 2d 828, 836 (1977). *See State v. Maynard*, 311 N.C. 1, 316 S.E. 2d 197 (1984).

Additionally, N.C.G.S. § 15A-927 provides in pertinent part:

(c) Objection to Joinder of Charges against Multiple Defendants for Trial; Severance.—

(1) When a defendant objects to joinder of charges against two or more defendants for trial because an out-of-court statement of a codefendant makes reference to him but is not admissible against him, the court must require the prosecutor to select one of the following courses:

a. A joint trial at which the statement is not admitted into evidence; or

b. A joint trial at which the statement is admitted into evidence only after all references to the moving defendant have been effectively deleted so that the statement will not prejudice him; or

c. A separate trial of the objecting defendant.

N.C.G.S. § 15A-927(c)(1) codifies the *Bruton* decision. *State v. Hayes*, 314 N.C. 460, 334 S.E. 2d 741 (1985).

In the joint trial of the defendant and Joe Allison, Barbara Allison testified about extrajudicial statements her husband had made to her regarding the defendant Welch's plans to commit a robbery. Upon objection, the trial court gave limiting instructions directing the jury to disregard the statements as to Welch. If these statements were inadmissible against Welch, N.C.G.S. § 15A-927(c)(1) and *Bruton* required the State to select to either not admit the statements, delete all references to Welch, or try the defendants separately. The State did not make any such choice.

Assuming *arguendo* that the hearsay statements were inadmissible as to the defendant Welch and that admitting them violated N.C.G.S. § 15A-927(c)(1) and *Bruton*, we turn to the question of whether the trial court's error in admitting them without proper deletions was prejudicial to Welch. *State v. Alston*, 307 N.C. 321, 298 S.E. 2d 631 (1983). *Bruton* involves the defendant's constitutional rights to confrontation and cross-examination. Errors affecting a constitutional right of a defendant are presumed to be prejudicial. *State v. Brown*, 306 N.C. 151, 293 S.E. 2d 569 (1982). Therefore, the defendant will be entitled to a new trial unless the State demonstrates that the error was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 17 L.Ed. 2d 705 (1967); *State v. Brown*, 306 N.C. 151, 293 S.E. 2d 569 (1982); N.C.G.S. § 15A-1443(b).

Overwhelming evidence of guilt will render even a constitutional error harmless. *Harrington v. California*, 395 U.S. 250, 23 L.Ed. 2d 284 (1969) (*Bruton* violation held harmless beyond a reasonable doubt where overwhelming evidence of guilt); *State v. Brown*, 306 N.C. at 164, 293 S.E. 2d at 578. In the present case, the defendant Welch himself testified that he did in fact plan and attempt to commit the robbery at Clemmer's Superette. Under cross-examination the defendant admitted that he went to his codefendant Allison's house and told the codefendant that he "had something set up and it was a store." Welch testified that his codefendant Allison drove him to Clemmer's Superette. Welch entered the store wearing the stocking over his head. His testimony

regarding the attempted robbery corroborated the facts stated by Sheila Mullins, the store's employee.

Barbara Allison's testimony concerning her husband's extra-judicial statements inculpating the defendant Welch added nothing of significance to Welch's own testimony. The defendant's own testimony was overwhelming untainted evidence in this regard. We conclude that any error by the trial court in overruling Welch's objections to such testimony by Barbara Allison or in denying Welch's motion to sever was harmless beyond a reasonable doubt.

By his second assignment of error, the defendant contends that a sample of his blood was improperly drawn in violation of N.C.G.S. § 15A-274 and in violation of his right under the fourth amendment to the Constitution of the United States to be free from unreasonable search and seizure. Specifically, the defendant makes two claims. First, he contends that the nontestimonial identification order for a blood sample gave him only a one hour notice in violation of the seventy-two hour notice requirement of N.C.G.S. § 15A-274. Second, he contends that one's submission to the taking of a blood sample may not be compelled constitutionally without a search warrant.

[2] A nontestimonial identification order authorized by Article 14 of Chapter 15A of the General Statutes of North Carolina is an investigative tool available in cases where there is not sufficient basis for making a lawful arrest. *State v. McDonald*, 32 N.C. App. 457, 232 S.E. 2d 467 (1977). Under N.C.G.S. § 15A-273, a judge may issue a nontestimonial identification order only on an affidavit which establishes that there is probable cause to believe that an offense punishable by imprisonment for more than one year has been committed, that there are reasonable grounds to suspect that the person named or described in the affidavit committed the offense, and that the results will be of material aid in determining whether that particular person committed the offense. However, N.C.G.S. § 15A-274 requires that the order be served at least seventy-two hours before the identification procedure unless the nature of the evidence is such that delay will adversely affect its probative value or it is likely that the evidence will be destroyed, altered or modified.

Although in the case *sub judice* the nontestimonial identification order was issued by Judge Friday in the Superior Court Division only one hour before the identification procedure was to be conducted, we do not consider or decide whether the order complied with the requirements of N.C.G.S. §§ 15A-273 and 274. As held in *State v. Irick*, 291 N.C. 480, 490, 231 S.E. 2d 833, 840 (1977), "Article 14 of Chapter 15A applies only to suspects and accused persons before arrest, and persons formally charged and arrested, who have been released from custody pending trial. The statute does not apply to an in custody accused." Since the defendant in this case was in custody at the Gaston County Jail when the nontestimonial identification order was issued upon the State's motion,[1] it was error for the trial court to issue the order. *Id.*

[3] We next must address, then, the defendant's contention that his fourth amendment right to be free from unreasonable searches and seizures was violated when the sample of his blood was drawn in the absence of a search warrant. The withdrawal of a blood sample from a person is a search subject to fourth amendment protection. *Schmerber v. California*, 384 U.S. 757, 16 L.Ed. 2d 908 (1966). *See Davis v. Mississippi*, 394 U.S. 721, 22 L.Ed. 2d 676 (1969) (Detention for fingerprints subject to fourth amendment); *Cupp v. Murphy*, 412 U.S. 291, 36 L.Ed. 2d 900 (1973) (Fingernail scrapings). But "the Fourth Amendment precludes only those intrusions into the privacy of the body which are unreasonable under the circumstances." *State v. Cobb*, 295 N.C. 1, 20, 243 S.E. 2d 759, 770 (1978). Since the withdrawal of a blood sample is subject to fourth amendment requirements, a search warrant must be procured before a suspect may be required to submit to such a procedure unless probable cause and exigent circumstances exist that would justify a warrantless search.

As stated in *Schmerber*:

Search warrants are ordinarily required for searches of dwellings, and, absent an emergency, no less could be required where intrusions into the human body are concerned.

---

1. *Irick* did not address or decide whether a nontestimonial identification order may be issued on the motion of the defendant in custody, and that issue does not arise in this case. *See* N.C.G.S. 15A-281 (1973).

The requirement that a warrant be obtained is a requirement that the inferences to support the search "be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." *Johnson v. United States*, 333 U.S. 10, 13-14, 92 L Ed 436, 440, 68 S Ct 367; *see also Aguilar v. Texas*, 378 U S 108, 110-111, 12 L Ed 2d 723, 725, 726, 84 S Ct 1509. The importance of informed, detached and deliberate determinations of the issue whether or not to invade another's body in search of evidence of guilt is indisputable and great.

384 U.S. at 770, 16 L.Ed. 2d at 919. In that case the defendant was arrested at a hospital while receiving treatment for injuries suffered in an automobile accident involving the car that he had been driving. Without a warrant, a police officer directed a hospital physician to withdraw a blood sample. The resulting chemical analysis of the alcohol content of the defendant's blood was introduced at trial, and he was convicted of driving while under the influence of intoxicating liquor.

The Supreme Court concluded in *Schmerber* that the withdrawal of blood without a search warrant was reasonable under the specific facts of that case. The Supreme Court reasoned that given the evidence in that case, the officer

might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant under the circumstances, threatened "the destruction of evidence," *Preston v United States*, 376 US 364, 367, 11 L Ed 2d 777, 780, 84 S Ct 881. We are told that the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system. Particularly in a case such as this, where time had to be taken to bring the accused to a hospital and to investigate the scene of the accident, there was no time to seek out a magistrate and secure a warrant. Given these special facts we conclude that the attempt to secure evidence of blood alcohol content in this case was an appropriate incident to petitioner's arrest.

384 U.S. at 770-71, 16 L.Ed. 2d at 919-20. The Supreme Court further concluded that under the facts of *Schmerber*, the taking of

the sample of the defendant's blood without a search warrant did not violate his rights under the fourth and fourteenth amendments to be free of unreasonable searches and seizures. Although many factors are to be considered in applying the *Schmerber* balancing test, we read that decision as forbidding law enforcement authorities acting without a search warrant from requiring a defendant to submit to the drawing of a blood sample unless probable cause and exigent circumstances exist to justify a warrantless seizure of the blood sample. *See Winston v. Lee*, 470 U.S. 753, 84 L.Ed. 2d 662 (1985).[2]

The case *sub judice* is, of course, very different from the *Schmerber* case. In the present case, the defendant had been indicted for first degree murder and was in custody at the Gaston County Jail. Although probable cause existed to believe that the defendant had committed the crime, exigent circumstances did not exist to justify the warrantless search. The defendant's blood type was not evanescent but would remain constant. There was no threat that the evidence would be destroyed as in *Schmerber* where the alcohol in the blood would dissipate. Therefore, drawing a blood sample from the defendant without first obtaining a search warrant violated the defendant's rights under the fourth and fourteenth amendments to be free from unreasonable searches and seizures. *See Winston v. Lee*, 470 U.S. 753, 84 L.Ed. 2d 662 (1985); *Schmerber v. California*, 384 U.S. 757, 16 L.Ed. 2d 908 (1966).

However, our inquiry does not stop at this point. Having determined that the defendant's rights under the fourth and fourteenth amendments have been violated, we must next decide whether the sample of the defendant's blood which came into the State's possession as a result of this violation must be excluded from evidence at his trial. We conclude that the trial court was not required to exclude the blood sample and did not err by admitting it into evidence at the defendant's trial.

2. We do not suggest that any of the procedures for obtaining a nontestimonial identification order under article 14 of chapter 15A are facially unconstitutional. *See generally, e.g.*, Comment, *Criminal Law and Procedure—Nontestimonial Identification Orders Without Probable Cause*, 12 Wake Forest L. Rev. 387 (1976). Article 14 was enacted in response to the dictum contained in *Davis v. Mississippi*, 394 U.S. 721, 728, 22 L.Ed. 2d 676, 681 (1969) inviting the use of "narrowly circumscribed procedures for obtaining the fingerprints of individuals for whom there is no probable cause to arrest."

In *United States v. Leon*, 468 U.S. 897, 82 L.Ed. 2d 677 (1984), the Supreme Court carved out a good faith exception to the exclusionary rule stating that it should not apply when officers acted in objectively reasonable reliance on a warrant issued by a detached and neutral magistrate but subsequently found invalid. In *Leon* a search was conducted pursuant to a search warrant that was later determined to lack probable cause. In upholding the search, the Supreme Court stated that the exclusionary rule "operates as a 'judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the person aggrieved.'" 468 U.S. at 906, 82 L.Ed. 2d at 687. The exclusionary rule was designed to deter police misconduct, not a judge's errors. "Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." 468 U.S. at 921, 82 L.Ed. 2d at 697. The Supreme Court concluded in *Leon* that the "suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." 468 U.S. at 918, 82 L.Ed. 2d at 695. Since the officer in *Leon* reasonably relied on a warrant issued by a detached and neutral magistrate, the Supreme Court concluded that the exclusionary rule should not be applied and that the evidence obtained pursuant to that warrant should be admissible.

In *Massachusetts v. Sheppard*, 468 U.S. 981, 82 L.Ed. 2d 737 (1984), a police officer presented an affidavit for an arrest warrant and a search warrant in a murder case to a judge who concluded that probable cause had been established to permit the search of the defendant's residence. Unable to find a proper warrant form, the officer modified and used an old form for warrants to search for controlled substances. The officer pointed this out to the judge who made additional corrections on the warrant form. The search warrant was subsequently held invalid because the items to be seized were not particularly described and the evidence obtained was suppressed by the Massachusetts Supreme Judicial Court. The Supreme Court of the United States noted that the officer took every step reasonably expected to comport with fourth amendment requirements. The officer reasonably relied on the judge's assurances that the warrant was valid. The Supreme

Court stated that "we refuse to rule that an officer is required to disbelieve a judge who has just advised him, by word and by action, that the warrant he possesses authorizes him to conduct the search he has requested." 468 U.S. at 989-990, 82 L.Ed. 2d at 744. The search in *Sheppard* was upheld under the application of the good-faith exception established in *Leon,* and the Supreme Court reversed the Massachusetts decision suppressing the evidence.

In the present case the police officer went before a superior court judge, a "detached and neutral magistrate," who issued a nontestimonial identification order based on an affidavit that set forth facts establishing (1) probable cause to believe that an offense punishable by imprisonment for more than one year had been committed, (2) reasonable grounds to suspect that the defendant Welch committed the offense, and (3) the results will materially aid in determining whether the person committed the offense. *See* N.C.G.S. § 15A-273 (1973). In the present case the officer reasonably relied on the order that was issued by the judge. As in *Sheppard* the officer took every reasonable step to comport with the fourth amendment requirements. We decline to apply the exclusionary rule to this good-faith violation of the fourth amendment. To apply the rule here would not serve to discourage police misconduct and would only defeat justice for no good reason. Therefore, on the basis of the *Leon-Sheppard* good-faith exception to the exclusionary rule, we conclude that the trial court did not err on these facts by admitting evidence resulting from the taking of the sample of the defendant's blood.

[4] By his third assignment of error, the defendant contends that the evidence was insufficient to prove the elements of premeditation and deliberation for first degree murder. This assignment is without merit.

To submit a charge of first degree murder to the jury, there must be substantial evidence from which a jury could determine that the defendant intentionally shot and killed Mr. Clemmer with malice, premeditation and deliberation.

Premeditation has been defined by this Court as thought beforehand for some length of time, however short. No particular length of time is required; it is sufficient if the process of premeditation occurred at any point prior to the killing. *State v. Myers,* 299 N.C. 671, 263 S.E. 2d 768 (1980);

> *State v. Reams*, 277 N.C. 391, 178 S.E. 2d 65 (1970); *State v. Robbins*, 275 N.C. 537, 169 S.E. 2d 858 (1969). An unlawful killing is committed with deliberation if it is done in a "cool state of blood," without legal provocation, and in furtherance of a "fixed design to gratify a feeling of revenge, or to accomplish some unlawful purpose." *State v. Faust*, 254 N.C. 101, 106-07, 118 S.E. 2d 769, 772 (1961). The intent to kill must arise from "a fixed determination previously formed after weighing the matter." *State v. Exum*, 138 N.C. 599, 618, 50 S.E. 283, 289 (1905). *See also State v. Baggett, supra; State v. Britt*, 285 N.C. 256, 204 S.E. 2d 817 (1974).

*State v. Corn*, 303 N.C. 293, 297, 278 S.E. 2d 221, 223 (1981).

In testing the sufficiency of the evidence to sustain a conviction, the evidence is to be considered in the light most favorable to the State and the State is entitled to every reasonable inference to be drawn therefrom. *State v. Bondurant*, 309 N.C. 674, 309 S.E. 2d 170 (1983). The evidence in the present case tended to show that the defendant armed himself with a sawed-off shotgun shortly before the robbery. He had ample time to check the gun to be sure it was loaded and operational. The defendant had previously planned to rob Clemmer's Superette. Armed and masked the defendant burst into the store. As he pointed his gun at the victim and the cashier, he demanded money and warned them not to move. The defendant cocked his gun and shot the victim who had moved toward a gun hidden by the cash register. This was substantial evidence from which the jury could determine that the defendant intentionally killed the victim with premeditation and deliberation.

In his final assignment of error, the defendant contends that use of a "death qualified" jury during the guilt determination phase of his trial denied him due process and his right to trial by jury. This assignment is without merit. *See, e.g., State v. Bondurant*, 309 N.C. 674, 309 S.E. 2d 170 (1983).

No error.

Justice BILLINGS concurring.

I disagree with the statement in the majority opinion that "[s]ince the defendant in this case was in custody at the Gaston

County Jail when the nontestimonial identification order was issued upon the State's motion, it was error for the trial court to issue the order." The conclusion of the majority is based upon a dictum statement in *State v. Irick*, 291 N.C. 480, 490, 231 S.E. 2d 833, 840 (1977). In *Irick*, the question involved the admissibility of fingerprint evidence when fingerprints were obtained without a nontestimonial identification order from a defendant in custody. The Court noted that N.C.G.S. § 15A-272 provides that nothing in the article "shall preclude such additional investigative procedures as are otherwise permitted by law," and that N.C.G.S. § 15A-502(a)(1) allows the police to fingerprint a person when he has been arrested or committed to a detention facility. Therefore, the fingerprints of a person in custody were properly obtained without a need to utilize procedures authorizing nontestimonial identification orders.[1]

Unfortunately, the opinion in *Irick* goes further and says "we hold that Article 14 of Chapter 15A applies only to suspects and accused persons before arrest, and persons formally charged and arrested, who have been released from custody pending trial. The statute does not apply to an in custody accused." 291 N.C. at 490, 231 S.E. 2d at 840. That statement by the Court went beyond the interpretation of the statute necessary for decision in that case, and I believe it is an incorrect statement of the law. The majority now compounds the error by applying the statement to hold that the judge in the instant case erred in issuing a nontestimonial identification order because the defendant was in custody.

N.C.G.S. § 15A-272 (1983) specifically and clearly states: "A request for a nontestimonial identification order may be made prior to the arrest of a suspect *or after arrest and prior to trial.* Nothing in this Article shall preclude *such additional investigative procedures* as are otherwise permitted by law." [Emphasis added.]

---

1. *See also State v. Carson*, 296 N.C. 31, 39, 249 S.E. 2d 417, 422 (1978) where this Court said "[w]e are advertent to the provisions of Article 14 of Chapter 15A of the General Statutes which require that an order for nontestimonial evidence shall contain a statement that the person is entitled to counsel at the procedure and to appointment of counsel if he cannot afford to retain one. In our opinion, the provisions of this article of the General Statutes are not here applicable since defendant was legally arrested on a misdemeanor charge, and under these circumstances, he could be photographed without the aid of the nontestimonial order."

The statute does not limit its post-arrest application to those instances when a defendant has been released pending trial. It clearly provides that the fact that other procedures are otherwise available to obtain the same information from the suspect or defendant does not negate the availability of the procedures provided in Article 14 of Chapter 15A.[2]

I see no point in discouraging, much less precluding, law enforcement personnel from obtaining judicial authorization for identification procedures when a defendant is in custody and thus encouraging them to act without judicial screening.

In most instances when a suspect is in custody, the investigating or prosecuting authorities will likely prefer to use other means to obtain information which do not contain the protections required by N.C.G.S. § 15A-279, such as the requirement for counsel and the prohibition on the use of any statement made in the absence of counsel, or the 72-hour delay required by N.C.G.S. § 15A-277. However, if the State chooses to utilize and be limited by the procedures authorized by Article 14 of Chapter 15A, the issuance of a nontestimonial identification order is not error simply because the person ordered to submit to the procedures is already in custody.

In the instant case, I agree that the nature of the evidence sought did not justify elimination of the 72-hour requirement of N.C.G.S. § 15A-274. I also agree that the involuntary drawing of blood is a more intrusive procedure than fingerprinting and that whether the State can forcibly draw a blood sample in the absence of either probable cause and exigent circumstances or a search warrant finding full probable cause without violating the Fourth Amendment to the United States Constitution may be open to question. *See Schmerber v. California,* 384 U.S. 757, 16 L.Ed. 2d 908 (1966). If the nontestimonial identification order is inadequate to authorize the nonconsensual taking of blood samples,

---

2. Clearly neither the *Irick* case nor this case limits the right of a defendant to obtain a nontestimonial identification order under N.C.G.S. § 15A-281. I also assume that a nontestimonial identification order pursuant to N.C.G.S. § 7A-599 may be obtained for identification procedures applicable to a juvenile alleged to be delinquent who is in custody, since N.C.G.S. § 7A-596 prohibits nontestimonial identification procedures involving such a juvenile without an order, unless the juvenile has been transferred to superior court for trial as an adult.

the defect is not because the defendant is in custody, and it would exist in all nontestimonial identification orders for blood samples issued with less than probable cause.

However, in the instant case, I would hold that even though the nontestimonial identification order was invalid because it did not comply with the 72-hour notice requirement, and even if a nontestimonial identification order issued on less than probable cause may not constitutionally authorize the involuntary drawing of blood from a person, since the *arrest* of the defendant was justified by a determination of probable cause to believe, rather than mere reasonable grounds to suspect, that the defendant committed the murder, the findings justifying the arrest combined with the findings made by the judge in issuing the nontestimonial identification order were sufficient to meet the concerns which underlie the requirement for a search warrant, and that thus the good faith exception to the exclusionary rule announced in *United States v. Leon*, 468 U.S. ---, 82 L.Ed. 2d 677 (1984) and *Massachusetts v. Sheppard*, 468 U.S. ---, 82 L.Ed. 2d 737 (1984) is appropriately applied to the evidence obtained in this case. Therefore I concur in the result reached by the Court on the defendant's second assignment of error. I join in the remainder of the Court's opinion.

Justice EXUM concurring.

I agree that under the decisions of the United States Supreme Court relied on by the majority this Court must apply the "good faith" exception to the exclusionary rule in determining admissibility of evidence unconstitutionally seized under the Fourth and Fourteenth Amendments to the United States Constitution. I concur with the majority's application of these cases to the facts before us.

The parties have not argued whether this exception may sustain admissibility under the North Carolina Constitution. My concurrence in the Court's opinion is based on my understanding that the opinion neither addresses nor answers this question.

I also concur in Justice Billings' concurring opinion insofar as it discusses the applicability of nontestimonial identification orders to persons in custody.