STATE OF NORTH CAROLINA v. GEORGE RICHARD FISHER

No. 624A85

(Filed 5 November 1987)

**1. Kidnapping § 1; Constitutional Law § 34— double jeopardy—first degree kidnapping and attempted first degree rape**

Defendant's convictions for first degree kidnapping and attempted first degree rape were remanded for arrest of judgment on one of the convictions where the trial judge charged the jury that it could find defendant guilty of first degree kidnapping if they found that defendant sexually assaulted the victim.

**2. Criminal Law § 66.9— photographic identification—not impermissibly suggestive**

The trial court in a prosecution for murder, rape, and kidnapping did not err by concluding that the pretrial identification procedures through which a witness identified defendant were not so unnecessarily suggestive and conducive to irreparable mistaken identification as to violate defendant's right to due process where the witness initially identified defendant from a news photograph, went to the police, was shown a photographic lineup that included defendant, and later that day was shown a second lineup of six photographs of defendant. Assuming that the pretrial identification procedures were unnecessarily suggestive, they were not impermissibly suggestive when weighed against findings that the witness had a good look at defendant's face in daylight, the witness's description matched defendant's, the witness was positive of his identification and never identified anyone other than defendant, the identification took place only eight days after the witness saw the man he identified as defendant, and the witness had taken his medication for a lithium imbalance on the day he saw defendant and was "just fine."

**2. Searches and Seizures § 4— blood test results—no motion to suppress prior to trial—right to contest admissibility not waived**

The defendant in a prosecution for murder, rape, and kidnapping did not waive his right to contest the admissibility of tests of blood samples taken from him by not making his motion before trial where it was uncontroverted that the State did not obtain a search warrant before taking samples from defendant and, although defendant received copies of the laboratory reports and therefore had notice that the State had the evidence, he never received any notice that the State intended to use the evidence. N.C.G.S. § 15A-975.

**4. Searches and Seizures § 4— blood sample without a search warrant—admissible**

The trial judge did not err in admitting test results of blood samples taken from defendant under the good faith exception to the exclusionary rule where a copy of a valid nontestimonial identification order was not presented by the district attorney at trial but defendant had moved to suppress the results of later samples pursuant to N.C.G.S. § 15A-279(f), which prohibits the taking of evidence pursuant to a nontestimonial identification order if the per-

son subject to the order has been previously subject to a nontestimonial identification order. Furthermore, defendant did not take exception to findings that defendant had been taken to the hospital to have the samples in question taken pursuant to a nontestimonial identification order or that his motion to suppress based on a prior nontestimonial identification order had been allowed.

Justice WHICHARD did not participate in the consideration or decision of this case.

Justice MITCHELL concurring.

Justice MARTIN dissenting in part.

Justice MEYER joins in the dissenting opinion.

APPEAL by defendant from sentences of life imprisonment for murder in the first degree, twenty years imprisonment for attempted first degree rape and forty years imprisonment for first degree kidnapping, to run consecutively. Defendant was tried before *Judge Edwin S. Preston, Jr.*, and a jury at the 5 August 1985 Criminal Session of Superior Court, ORANGE County. Heard in the Supreme Court 15 April 1987.

*Lacy H. Thornburg, Attorney General, by Christopher P. Brewer, Assistant Attorney General, for the State.*

*Ann B. Petersen for defendant-appellant.*

FRYE, Justice.

Defendant contends on this appeal that his convictions and sentences for both first degree kidnapping and attempted first degree rape violated the double jeopardy clause of the United States Constitution. We agree and remand for resentencing as set forth in this opinion. Defendant also contends that his identification by the State's witness Thomas Brown and the results of a blood sample taken from him on 2 February 1985 were erroneously admitted. We disagree, and find no error with respect to these issues.

No detailed account of the facts of this case is necessary for an understanding of the issues presented on this appeal. Summarily stated, the evidence introduced by the State at defendant's trial showed that on Wednesday, 30 January 1985, the body of Jean Fewel, born Kar Har Cheung, was discovered near Finley

Golf Course in Chapel Hill, North Carolina. She was hanging from a tree by a rope tied around her neck. The cause of death was strangulation. Examination of Miss Fewel's body and her clothes revealed semen stains and the presence of sperm in her vagina and anus, but the Assistant Chief Medical Examiner could find no indication of trauma.

Ms. Fewel, who was eight years old, was in the process of being adopted by her adoptive parents, residents of Chapel Hill. She had last been seen by her brother on the morning of her death, standing beside a car with the hood raised. A man was leaning over the car engine.

Defendant was indicted on 25 March 1985 in separate bills of indictment for murder, first degree rape, and first degree kidnapping of Miss Fewel. The three offenses were consolidated for trial. The case came on for trial as a capital case at the 5 August 1985 Criminal Session of Superior Court, Orange County. At the close of the State's evidence in the guilt phase, the trial judge dismissed the charge of first degree rape and allowed the State to continue on a charge of attempted first degree rape. The jury found defendant guilty as charged on each offense.

Pursuant to N.C.G.S. § 15A-2000, a separate sentencing hearing was held. The jury found as an aggravating circumstance that the murder was committed during an attempted first degree rape. The jury specifically did not find the submitted aggravating circumstance that the murder was especially heinous, atrocious or cruel. The jury also found numerous mitigating circumstances. It found that the mitigating circumstances were insufficient to outweigh the aggravating circumstance but did not find the aggravating circumstance sufficiently substantial to call for the imposition of the death penalty when considered with the mitigating circumstances. Accordingly, the jury returned a recommendation of life imprisonment. The trial judge sentenced defendant to life imprisonment for the offense of first degree murder, twenty years for the attempted first degree rape, and forty years for the first degree kidnapping, the sentences to run consecutively.

Defendant appealed his conviction for first degree murder to this Court. His motion to bypass the Court of Appeals on the lesser offenses was allowed on 22 April 1986.

## I.

[1] Defendant first contends that the prohibition against double jeopardy precludes him from being convicted of both first degree kidnapping and attempted first degree rape. For the reasons stated in our decision in *State v. Belton*, 318 N.C. 141, 347 S.E. 2d 755 (1986), we agree.

In the trial judge's instructions to the jury at the close of the guilt phase of defendant's trial, the judge charged that the jury could find defendant guilty of first degree kidnapping if, *inter alia*, they found that defendant sexually assaulted the victim. In *State v. Freeland*, 316 N.C. 13, 340 S.E. 2d 35 (1986), we held that a criminal defendant could not be convicted of both first degree kidnapping and a sexual assault when the latter was used to prove an element of the kidnapping. The State argues in the instant case that it presented evidence from which the jury could have inferred that defendant also committed first degree sexual offense as well as attempted first degree rape, and that this unindicted sexual offense could have been used by the jury to supply the "sexual assault" element of first degree kidnapping despite the lack of any instructions to that effect. Nevertheless, we are unable here, as we were unable in *Belton*, to say that the jury must have understood that it could only convict for first degree kidnapping by using the unindicted sexual assault, rather than the attempted rape, to supply the sexual assault element of the crime of first degree kidnapping. We hold that our decision in *Belton* controls in the instant case and that defendant's convictions of both first degree kidnapping and attempted first degree rape cannot stand. On remand, the trial court may either arrest judgment on the attempted first degree rape charge or arrest judgment on the first degree kidnapping charge and resentence defendant for second degree kidnapping. *See State v. Freeland*, 316 N.C. 13, 340 S.E. 2d 35; *State v. Dudley*, 319 N.C. 656, 356 S.E. 2d 361 (1987).

## II.

[2] Defendant next argues that the in-court identification of him by the State's witness Thomas Brown, as the man Brown saw driving the victim down Churchill Street in Chapel Hill on the morning of her death, was reversible error. Defendant contends that this identification was the product of impermissibly sug-

gestive pretrial identification procedures. The test for determining whether pretrial identification procedures were impermissibly suggestive is clear. "Identification evidence must be excluded as violating a defendant's right to due process where the facts reveal a pretrial identification procedure so impermissibly suggestive that there is a very substantial likelihood of irreparable misidentification." *State v. Harris*, 308 N.C. 159, 162, 301 S.E. 2d 91, 94 (1983). As defendant correctly notes, determination of this question involves a two-step process. First, the Court must determine whether the pretrial identification procedures were unnecessarily suggestive. If the answer to this question is affirmative, the court then must determine whether the unnecessarily suggestive procedures were so impermissibly suggestive that they resulted in a substantial likelihood of irreparable misidentification. *Manson v. Brathwaite*, 432 U.S. 98, 53 L.Ed. 2d 140 (1977); *State v. Flowers*, 318 N.C. 208, 347 S.E. 2d 773 (1986); *State v. Headen*, 295 N.C. 437, 245 S.E. 2d 706 (1978). Whether a substantial likelihood exists depends on the totality of the circumstances.

> The factors to be considered . . . include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.

*Manson*, 432 U.S. at 114, 53 L.Ed. 2d at 154.

Upon defendant's objection to Brown's identification, the trial judge held a *voir dire* to determine its admissibility and ruled that Brown's identification was admissible. In support of his ruling, the trial judge made findings of fact and conclusions of law. He made the following findings, *inter alia:*

> 12. Mr. Brown observed that the driver of this car was a man wearing a plaid shirt who had blond hair, a beard and wore thick-framed glasses. Later on February 7, 1985, he gave this description to law enforcement officers.

> 13. Having seen Jean Fewel and the driver on January 30, 1985, Mr. Brown was watching television when he saw the of-

ficers 'bringing the defendant to the initial hearing of the charges.' That was when he was certain about who he had seen on January 30. Prior to seeing any account of the crime or any photographs of the defendant on television, Mr. Brown had told his brother John, what he had seen. When he saw the defendant on the television, he said 'that's him!' He also 'saw that they had found the girl and everything.'

14. Mr. Brown saw the News and Observer for February 5, 1985 (Defendant's Voir Dire Exhibit Number Five for Identification), which had a photograph of George R. Fisher wearing handcuffs and coming out of a building with police officers.

Defendant has taken no exception to these findings. Accordingly, the question before this Court is whether the findings support the trial judge's conclusions that the pretrial identification procedures used were not "so unnecessarily suggestive and conducive to irreparable mistaken identification as to violate defendant's right to due process" and that Brown's in-court identification was of independent origin.

Defendant contends that the pretrial identification procedures used in his case rise to the level of being impermissibly suggestive. He notes that Brown initially identified him from a news photograph. Brown then went to the police and was shown two photographic lineups by the police who were aware that Brown had seen the news photograph. Brown was shown first a photographic lineup that included defendant and later that day was shown a "second lineup" of six photographs of defendant.

First, we note that the Fourth Circuit has intimated that suggestive pretrial identification procedures that do not result from state action do not violate defendant's due process rights. *United States v. Davis,* 407 F. 2d 846 (4th Cir. 1969).

Second, we have examined the first photographic lineup seen by the witness Brown, and we do not believe that it was unnecessarily suggestive. The photographs were in black-and-white and had similarly sized white borders. All of the photographs in the lineup were of white males. Each of the men depicted had a beard and mustache. None had either very short or very long hair. All were wearing casual clothes, and all wore glasses. De-

fendant's glasses were only slightly thicker than those of the other men. Two of the men had unmistakably dark hair; two were unmistakably blond. The trial judge found that the police officers in no way suggested that Brown select defendant's photograph, or indeed that a photograph of the man Brown saw was in the lineup. As this Court has said before, "[D]ue process does not require that all participants in a lineup be identical, all that is required is that a lineup be a fair one and that the officers conducting it do nothing to induce the witness to select one participant rather than another." *State v. Grimes*, 309 N.C. 606, 610, 308 S.E. 2d 293, 295 (1983).

Third, defendant's complaint about the second lineup appears to be only that all six photographs were of defendant. Nothing else about this lineup appears to have been suggestive.

Assuming, *arguendo*, that the progress of the pretrial identification procedures from a news photograph to the first photographic lineup, which contained one photograph of defendant and photographs of similarly attired men, to the second lineup, composed entirely of photographs of defendant, was unnecessarily suggestive; nevertheless, these procedures could only be impermissibly suggestive if, taken together, they gave rise to a very substantial likelihood of irreparable misidentification. The trial judge found that the witness " 'got a real good look at [the man's] face' " in daylight when he saw the man with the victim on the morning of 30 January 1985. The description Brown gave of this man, although quite general, matches defendant. The trial judge found that Brown was positive of his identification and had never identified anyone other than defendant. The identification took place only eight days after Brown saw the man he identified as defendant. The only other circumstance of note in this case is that Brown suffers from lithium imbalance; the trial judge found, however, that on 30 January 1985, Brown had taken his medication and was " 'just fine.' " When the suggestiveness of the pretrial identification procedures, even taken together, is weighed against these factors, it is clear that the procedures do not "give rise to a very substantial likelihood of misidentification." *State v. Harris*, 308 N.C. at 163, 301 S.E. 2d at 94. *Accord State v. Corbett*, 309 N.C. 382, 307 S.E. 2d 139 (1983). The trial judge did not err in so concluding. Our inquiry therefore ends at this point. *State v. Leggett*, 305 N.C. 213, 287 S.E. 2d 832 (1982).

### III.

Finally, defendant argues that the trial court erred in admitting into evidence test results of a blood sample drawn from defendant on 2 February 1985.

In support of his ruling on defendant's motion to suppress this evidence, the trial judge made findings of fact. Essentially, he found that Captain Howard Pendergraph of the Chapel Hill Police Department and S.B.I. Agent Troy Hamlin took defendant to Memorial Hospital in Chapel Hill on 2 February 1985. A physician there took a blood sample, a pubic hair sample and a saliva sample from defendant "pursuant to a non-testimonial identification order." It is uncontroverted that similar samples were again taken from defendant in May, 1985, pursuant to a nontestimonial identification order. Defendant received copies of the laboratory reports on both sets of samples.

The trial judge also found that at the trial defendant moved to suppress the results of the second sample "pursuant to G.S. 15A-279(f)." That statute provides, "[a] nontestimonial identification order may not be issued against a person previously subject to a nontestimonial identification order unless it is based on different evidence which was not reasonably available when the previous order was issued." N.C.G.S. § 15A-279(f) (1983). According to the findings of fact, defendant's motion was allowed. The State later sought to introduce the results from the first group of samples, taken on 2 February 1985. Defendant moved to suppress this evidence, and the trial judge denied this motion on the grounds that defendant had waived his right to contest the admissibility of the evidence for failure to comply with the advance notice requirement of N.C.G.S. § 15A-975(a).

Defendant takes no exception to the trial judge's findings of fact.

[3] Defendant contends on appeal that the test results of the blood sample taken on 2 February 1985 were inadmissible because the sample was the result of a warrantless search and seizure in violation of his constitutional rights. He also contends that he did not waive his right to contest the admissibility of this evidence.

N.C.G.S. § 15A-975 provides that motions to suppress evidence must be made prior to trial unless "the State has failed

to notify the defendant's counsel . . . of its intention to use the evidence, and the evidence is . . . (2) Evidence obtained by virtue of a search warrant." N.C.G.S. § 15A-975(b) (1983). It is uncontroverted that the State did not obtain a search warrant before taking samples from defendant. Defendant's attorney argued before the trial judge that although he had received copies of the laboratory reports on both groups of samples, and therefore had notice that the State *had* the evidence, he had never received any notice that the State intended to *use* the evidence from the 2 February 1985 group of samples. The State does not contend otherwise. Accordingly, we agree with defendant that one of the exceptions to the general rule set forth in N.C.G.S. § 15A-975 applies in the instant case. Defendant did not waive his right to contest the admissibility of the test results of the blood samples taken from him on 2 February 1985. *Cf. State v. Maccia,* 311 N.C. 222, 316 S.E. 2d 241 (1984) (setting forth the general rule; no exception applicable).

[4] In *State v. Welch,* 316 N.C. 578, 342 S.E. 2d 789 (1986), this Court held that although the withdrawal of a blood sample from the defendant without a search warrant violated the defendant's right under the fourth amendment to the United States Constitution, the good-faith exception carved out by the United States Supreme Court in *United States v. Leon,* 468 U.S. 897, 82 L.Ed. 2d 677 (1984), applied to the officers in *Welch* who acted in reliance upon a nontestimonial identification order issued pursuant to the requirements of N.C.G.S. § 15A-271 to -282. Defendant in the instant case argues that no good-faith exception can apply here because the State failed to show the existence of a valid nontestimonial identification order for the 2 February 1985 taking of blood samples. Defendant's contention is predicated upon the failure of the district attorney to present a copy of such an order at trial.

We disagree with the defendant. The trial judge found as a fact that defendant moved to suppress the results of the May 1985 samples pursuant to N.C.G.S. § 15A-279(f). That statute only prohibits the taking of evidence pursuant to a nontestimonial identification order if the person subject to the order has been "previously subject" to a nontestimonial identification order. N.C.G.S. § 15A-279(f) (1983). Thus, defendant's own motion to suppress the results of the second set of samples presupposes the ex-

istence of a prior nontestimonial identification order. The trial judge found that this motion was allowed. The trial judge also found that Captain Pendergraph took defendant to Memorial Hospital on 2 February 1985 to have the samples in question taken "pursuant to a nontestimonial identification order." Although defendant contends before this Court that the State failed to show the existence of any order, defendant has nevertheless taken no exception to any of these findings of fact. They are accordingly binding upon this Court on appeal. *See State v. Lampkins*, 283 N.C. 520, 196 S.E. 2d 697 (1973). We hold that our decision in *State v. Welch* also controls the result in the instant case and the trial judge did not err in admitting the test results of the blood samples taken from defendant on 2 February 1985. *See* 316 N.C. 578, 342 S.E. 2d 789.

One final matter must be resolved in connection with this issue. On 7 November 1986, the State moved to amend the record on appeal to include a copy of the May 1986 nontestimonial identification order, the application for this order, and an affidavit by the district attorney. This Court allowed the State's motion on 18 November 1986, before the defendant's time to respond had elapsed. Defendant requested the Court to reconsider its order allowing the amendment and moved to strike the amendment and any references in the State's brief to matters contained therein. In support of his motion, defendant attached affidavits from his trial attorney and from the district attorney. This Court deferred action on defendant's motion and allowed it to be argued at oral argument. Defendant's motion is allowed. The amendment to the record allowed by this Court on 18 November 1986 and all references in the State's brief to matters therein are stricken.

For the reasons discussed herein, we find no error in defendant's trial, except that the case must be remanded to the Superior Court, Orange County, for resentencing in either the first degree kidnapping or the attempted first degree rape offense, in a manner not inconsistent with this opinion.

No. 85CRS556 Murder in the First Degree—No error.

No. 85CRS557 Attempted First Degree Rape—Remanded.

No. 85CRS558 First Degree Kidnapping—Remanded.

Justice WHICHARD did not participate in the consideration or decision of this case.

Justice MITCHELL concurring.

I continue to believe that the reasoning of Justice Martin's dissent, which I joined, in *State v. Belton*, 318 N.C. 141, 347 S.E. 2d 755 (1986), is correct and that *Belton* was wrongly decided on the double jeopardy question which is before us again in this case. As *Belton* represents the current status of the law on the question, however, I feel compelled to vote to apply it at this time. Because I am unable to say with certainty that the jury here used the sexual assault for which the defendant had not been indicted to supply the sexual assault element of the crime of first degree kidnapping, I am unable to distinguish this case from *Belton* with regard to the double jeopardy question. Accordingly, I concur in the opinion of the majority.

Justice MARTIN dissenting in part.

I continue to adhere to my dissent in *State v. Belton*, 318 N.C. 141, 347 S.E. 2d 755 (1986), on the double jeopardy issue; therefore, I respectfully dissent as to part I of the majority opinion.

Furthermore, even under *Belton*, a close reading of the evidence and the charge of the trial judge demonstrates that defendant's double jeopardy rights were not violated. Here, as in *Belton*, there was substantial evidence of a sexual assault on little Jean Fewel separate and apart from the attempted rape in the first degree. Dr. Deborah L. Radisch, a pathologist who performed the autopsy on Jean Fewel, testified that she found male sperm inside the vulva and vagina of the victim, as well as inside her anus. This testimony was also supported by the physical findings introduced into evidence. It is inescapable that at least two sexual assaults were committed on the victim. Dr. Radisch testified that the semen could have been placed in the vagina by being transferred to the vagina on some object smaller than an adult penis. There is no way that this semen could have been placed inside the vagina and inside the anus of this eight-year-old child without the acts being sexual offenses in violation of N.C.G.S. § 14-27.4. By so doing, defendant committed two sexual assaults on this child.

In the charge on attempted rape, the trial judge stated the testimony with respect to defendant's ejaculating in the pubic area of Jean Fewel, based upon the finding of semen in her vulva and vagina, as evidence of that charge. Nowhere in the charge on attempted rape did the trial judge mention the evidence of semen found in her anus.

Had the trial judge charged the jury, in part, on the kidnapping charge, as follows, there would be no question that the judgments would be proper:

> . . . and fifth, that Jean Fewel had been sexually assaulted. In determining this fifth element you may not consider the alleged attempted first degree rape. You must find the existence of another sexual assault on Jean Fewel separate and apart from the alleged attempted first degree rape. If the state has satisfied you beyond a reasonable doubt that defendant deposited semen inside the anus of Jean Fewel, aged eight years, by use of his penis or otherwise, that would constitute a sexual assault.

In charging the jury on kidnapping the trial judge said, in part:

> Fourth, that this removal was a separate, complete act, independent of and apart from the felony of attempted first degree rape; and fifth, that Jean Fewell [sic] had been sexually assaulted.
>
> So I charge that if you find from the evidence beyond a reasonable doubt that on or about January the 30th, 1985, George Fisher unlawfully put Jean Fewell into his car and carried her from near her home to the Old Mason Farm Road, Chapel Hill, and that Jean Fewell had not reached her 16th birthday and that her parents did not consent to this removal, and that this was done for the purpose of facilitating George Fisher's commission of the felony of attempted first degree rape, and that this removal of Jean Fewell was a separate, complete act, independent of and apart from the felony of attempted first degree rape, and that Jean Fewell had been sexually assaulted, it would be your duty to return a verdict of guilty of first degree kidnapping.

This part of the charge was repeated in the instructions on felony murder.

It was thus clear to the jurors that they must find that the taking and removal of the child was a separate and complete act, independent of and apart from the attempted rape. It was also clear to the jury that it must find that defendant committed a sexual assault on the victim in order to convict him of kidnapping in the first degree. With these two requisites presented side by side to the jury, any rational juror would know that there must be proof of a sexual assault upon the victim other than the attempted rape. Evidence of such additional sexual assault was overwhelming. Under these instructions, this Court is not required to make the assumptions complained of in *Belton*. There is no ambiguity to be construed in favor of the defendant. Under these circumstances, I do not find any violation of double jeopardy principles.

I concur in the remainder of the majority opinion.

Justice MEYER joins in this dissenting opinion.