STATE OF NORTH CAROLINA v. KEENAN MONTRELL WATKINS

No. COA11-770

(Filed 17 January 2012)

**1. Burglary and Unlawful Breaking or Entering—first-degree burglary—instrument crossed threshold—felonious breaking or entering**

The trial court erred by denying defendant's motion to dismiss the charge of first-degree burglary. The fact that defendant broke a window of the residence in the nighttime with an instrument to facilitate a subsequent entry, even if the instrument itself crossed the threshold, was not sufficient to find him guilty of burglary. The case was remanded to the trial court for judgment upon a verdict of guilty of felonious breaking or entering.

**2. Robbery—common law robbery—motion to dismiss—sufficiency of evidence—taking**

The trial court did not err by denying defendant's motion to dismiss the charge of common law robbery. The jury could reasonably conclude that the victim's car was no longer under his protection, but had been relinquished by him to defendant, and that defendant was exercising complete control over the car from the time defendant pointed the gun at the victim and ordered the victim to drive him away in the car.

**3. Identification of Defendants—out-of-court identification—in-court identification—show-up procedure not impermissibly suggestive**

The trial court did not commit plain error by admitting both the prior out-of-court identification and the in-court identification of defendant by the victim. The totality of circumstances revealed that the show-up identification procedure was not impermissibly suggestive. Further, the jury would not have returned a different verdict absent the challenged evidence because two officers testified at trial as to defendant's admission to committing the crime.

**4. Damages and Remedies—restitution—sufficiency of evidence**

A *de novo* review revealed that the trial court did not err by ordering defendant to pay restitution for a wrecked automobile.

The prosecutor's introduction of the actual title registration of the car showed the owner of the car and its value.

Appeal by defendant from judgments entered 3 February 2011 by Judge Yvonne Mims Evans in Mecklenburg County Superior Court. Heard in the Court of Appeals 29 November 2011.

*Attorney General Roy Cooper, by Assistant Attorney General John P. Barkley, for the State.*

*James N. Freeman, Jr., for defendant appellant.*

McCULLOUGH, Judge.

On 3 February 2011, a jury convicted Keenan Montrell Watkins ("defendant") of first-degree burglary, conspiracy to commit first-degree burglary, possession of a weapon of mass destruction, common law robbery, and first-degree kidnapping. On appeal, defendant contends the trial court (1) erred in denying his motions to dismiss the charges of first-degree burglary and common law robbery for insufficiency of the evidence, (2) committed plain error in admitting both out-of-court and in-court identifications of defendant, and (3) erred in awarding restitution not supported by sufficient evidence. We find no error in the trial court's denial of defendant's motion to dismiss the common law robbery charge, the trial court's admission of the identification evidence, and the trial court's award of restitution. However, we vacate the judgment on defendant's first-degree burglary conviction and remand to the trial court for entry of judgment as upon a guilty verdict for felonious breaking or entering.

## I. Background

The State's evidence produced at trial tended to show the following events on the evening of 9 May 2009. Jamie Hairston ("Hairston") was living in a townhome with her boyfriend and his roommate located at 634 Lex Drive in Charlotte, North Carolina, near the University of North Carolina at Charlotte ("UNC Charlotte") campus. Around 11:00 p.m., Hairston was alone in the townhome and asleep in the downstairs bedroom when she heard what sounded like scratching and prying at the back door. Hairston immediately got out of bed and ran up the stairs of the townhome and out the front door to a neighbor's home. Hairston then called 911. While she was on the phone with emergency services, Hairston heard someone running through the woods located behind the apartment complex. Police officers arrived at the scene within five minutes.

Officer Matthew Horner ("Officer Horner") of the Charlotte-Mecklenburg Police Department ("CMPD") responded to the call at 634 Lex Drive that evening. Officer Horner met Hairston in the parking lot of the apartment complex, where she explained what had happened. Officer Horner then went inside the residence to ensure that no one was present. Officer Horner noticed broken glass at the back door area of the ground level bedroom and that the window next to the back door was busted. While searching the residence, Officer Horner discovered a large glass marijuana "bong" and noted a strong odor of marijuana inside the residence. As Officer Horner exited the residence, Hairston informed Officer Horner that she had heard someone running in the woods behind the complex while he was inside searching the residence.

Officer Horner then circled the area and observed Markese Durant ("Durant") coming out of the woods and crossing an adjacent street approximately 50-100 feet from Hairston's townhome. Officer Horner got out of his vehicle to speak with Durant and noticed Durant was walking stiff-legged and trying to shield his right side from Officer Horner's sight. During questioning, Durant informed Officer Horner that Durant had a shotgun in his pants, upon which Officer Horner placed Durant under arrest and seized the shotgun. Officer Horner confirmed the shotgun barrel was 15.5 inches long and the total length of the gun was less than 25 inches long. Officer Horner detained Durant on the sidewalk and called for backup.

Meanwhile, Victor Smith ("Smith") was in the parking lot of the Phase 3 complex on the UNC Charlotte campus packing items into a 1998 Honda Accord that he had recently purchased from his roommate, although the car was still titled in Smith's roommate's name. Smith was working as a resident adviser in Building Y of the Phase 3 complex. As Smith was loading the car, he saw an individual approaching him. Smith felt uneasy, so he pulled out his cell phone, dialed 911, and described his surroundings. The individual asked Smith to take him to the "top" of campus. Smith did not know what the individual meant, so he told the individual he could not drive him, but he could get someone else to take him there. Smith then attempted to call campus security, but he did not have the correct number, so he called his building's resident coordinator and began to vaguely describe what was happening. At that point, the individual took Smith's phone, pointed a gun at Smith, and told Smith to get in the car. At first, Smith tried to give the car keys to the individual, but

the individual told Smith to get in the car and drive while the individual got into the passenger seat of the car.

Smith began to drive the car down the street and made a right turn onto Mary Alexander Road. Smith then noticed a police vehicle approaching in their direction. Smith accelerated through the next stop sign in an effort to get the police officer's attention. Smith then opened the car door, jumped out of the car, and rolled onto the pavement, suffering some road rash and bruises. Smith's car then disappeared from his sight. After getting up, Smith was able to run to the police vehicle. Smith explained the situation to the police officer and got inside the police vehicle. In his written statement to the police officer, Smith described the individual who had approached him as a black male, 5'10" tall, with medium build.

Approximately 10-15 minutes after Officer Horner had detained Durant on the sidewalk, a car approached Officer Horner and Durant at a high rate of speed from Mary Alexander Road. The car swerved towards Officer Horner, then drove down a ravine and crashed into some trees. Officer Horner observed an individual jump out of the car and run away from the vehicle and into the woods.

Officer Phillip Greco ("Officer Greco") with the UNC Charlotte campus police was called to assist with the reported armed robbery in the parking lot of the Phase 3 complex on campus. Officer Greco was informed by radio that the stolen vehicle had crashed and that the suspect had run on foot into the woods away from Mary Alexander Road. Officer Greco drove to the other side of the woods, into the Campus Walk apartment complex and began to search the wood line. Officer Greco located defendant, who matched the description of the suspect he was looking for, lying under some chairs on a rear patio of the apartment complex at the edge of the woods. Officer Greco held defendant at gunpoint until other police officers arrived. Two CMPD officers and another UNC Charlotte campus police officer arrived to assist Officer Greco. Defendant was patted down for weapons, handcuffed, and detained for a show-up. While defendant was being detained for the show-up, a CMPD canine officer tracking the individual who left the car at the scene of the crash emerged from the woods with his handler and alerted to defendant.

The police officer whom Smith was with brought Smith to the back of Campus Walk apartments where the other officers had detained defendant. Spotlights illuminated the back of the apartment complex, and Smith saw defendant sitting in a patio chair. Officer

Greco used his flashlight to further illuminate defendant. Standing approximately 10-12 feet away from defendant, Smith identified defendant as the individual who had hijacked him. Smith had never seen defendant before that evening, and defendant was the only individual shown to Smith by the officers on that evening. Smith testified that he was "sure" defendant was the perpetrator when he made the identification on the night of 9 May 2009. Smith likewise identified defendant in court as the individual who approached him that night and testified he was still "sure" defendant was the perpetrator.

Kris Scheuerman ("Scheuerman"), a crime scene investigator for the CMPD, was called to the scene of the car crash. Scheuerman searched and photographed the car, a 1998 Honda Accord, and discovered a black air pistol BB gun located between the driver's seat and front center console.

Detectives John Fish ("Detective Fish") and Jeffrey Stewart ("Detective Stewart") of the CMPD were called to the University Medical Center to interview defendant. Defendant was in the emergency room, although neither detective observed any injuries on defendant's person. Detective Stewart advised defendant of his *Miranda* rights, and defendant stated that he understood his rights and that he agreed to waive those rights and talk to the officers.

Detective Fish and Detective Stewart both testified that defendant stated that he was informed by a friend that someone living at 634 Lex Drive had obtained a quantity of marijuana. Defendant and Durant then took a sawed-off shotgun with them to the residence with the idea to break in and steal the marijuana and/or money. They believed no one would be home in the residence. When they arrived at the residence, defendant used the end of the shotgun to break the glass in the back window. The two then heard someone inside the residence, split up, and ran. Defendant stated he eventually jumped into the passenger side of a car with someone he didn't know, told the driver to drive him away from the area, and the driver jumped out of the car. Detective Stewart testified that defendant stated he then took over the car and drove it and wrecked shortly thereafter. Defendant indicated he had used a BB gun pistol to take the car, but he didn't know what had happened to the gun. Detectives Fish and Stewart also interviewed Durant at the law enforcement center.

Defendant presented no evidence at trial. On 3 February 2011, the jury returned verdicts finding defendant guilty of first-degree burglary, conspiracy to commit first-degree burglary, possession of a

weapon of mass destruction, common law robbery, and first-degree kidnapping. The trial court entered judgments on the verdicts, sentencing defendant to a total minimum of 185 months' and a maximum of 240 months' imprisonment. Defendant gave notice of appeal in open court on 3 February 2011.

## II. Motion to dismiss: insufficiency of the evidence

Defendant's first argument on appeal is that the trial court erred in denying his motions to dismiss the charges of first-degree burglary and common law robbery. Specifically, defendant contends the State presented insufficient evidence that he entered the residence to support the first-degree burglary charge and that he took the vehicle from Smith to support the common law robbery charge.

### A. Standard of review

" 'Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied.' " *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000) (quoting *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980) (citations omitted)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). "In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994). "This Court reviews the trial court's denial of a motion to dismiss *de novo.*" *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007).

### B. First-degree burglary

[1] The elements of a first-degree burglary offense are: " '(1) the breaking (2) and entering (3) in the nighttime (4) into a dwelling house or a room used as a sleeping apartment (5) which is actually occupied at the time of the offense (6) with the intent to commit a felony therein.' " *State .v. Farrar*, 190 N.C. App. 202, 203, 660 S.E.2d 116, 117 (2008) (quoting *State v. Wells*, 290 N.C. 485, 496, 226 S.E.2d 325, 332 (1976)). Defendant challenges only the sufficiency of the evidence to support element two: entry.

In *State v. Sneed*, 38 N.C. App. 230, 247 S.E.2d 658 (1978), this Court addressed the issue of "defining 'entry' as used in the offenses of breaking or entering, or burglary." *Id.* at 231, 247 S.E.2d at 659. In *Sneed*, we quoted Blackstone for the definition of entry at common law:

> "As for the entry, any the least degree of it, with any part of the body, or with an instrument held in the hand, is sufficient: as, to step over the threshold, to put a hand or a hook in at a window to draw out goods, or a pistol to demand one's money, are all of them burglarious entries."

*Id.* at 231-32, 247 S.E.2d at 659 (quoting IV W. Blackstone, Commentaries 227). In *Sneed*, we also quoted Black's Law Dictionary 627 (4th ed. rev. 1968) as stating, " 'In cases of burglary, the least entry with the whole or any part of the body, hand, or foot, or with any instrument or weapon, introduced for the purpose of committing a felony, is sufficient to complete the offense.' " *Id.* at 231, 247 S.E.2d at 659.

Subsequently, in *State v. Gibbs*, 297 N.C. 410, 255 S.E.2d 168 (1979), our Supreme Court quoted with approval the following definition of entry:

> "Literally, entry is the act of going into the place after a breach has been effected, but the word has a broad significance in the law of burglary, for it is not confined to the intrusion of the whole body, but may consist of the insertion of any part for the purpose of committing a felony. Thus, *an entry is accomplished by inserting into the place broken the hand, the foot, or any instrument with which it is intended to commit a felony. . . .*"

*Id.* at 418, 255 S.E.2d at 174 (emphasis added) (quoting 13 Am. Jur. 2d *Burglary* § 10, p. 327). Our Supreme Court reiterated this definition in their 2008 opinion in *State v. Turnage*, 362 N.C. 491, 494, 666 S.E.2d 753, 755-56 (2008).

Notably, our Supreme Court's definition of entry expressly states "entry is the act of going into the place *after a breach has been effected*[.]" *Gibbs*, 297 N.C. at 418, 255 S.E.2d at 174 (emphasis added). In addition, the foregoing definitions provide that in order to establish an entry, the State must present evidence that the defendant either breached the threshold of the residence with some part of his body or with an "instrument with which it is intended to commit a felony." *Id.* Given these definitions by our Courts, we conclude there is no entry if the breach was accomplished only by an instrument inserted simultaneously during the course of the break. Accordingly,

where the State's evidence seeks to establish an entry by the defendant's use of an instrument, the defendant can only be guilty of burglary if the instrument that crossed the threshold was itself used to commit a felony within the residence. Thus, the defendant must either physically enter the residence, however slight, or commit the burglary "by virtue of the [instrument]." *State v. Surcey*, 139 N.C. App. 432, 435, 533 S.E.2d 479, 482 (2000).

Many leading treatises on criminal law recognize this distinction, and we find those sources persuasive in applying our definition of "entry" to the facts of the present case. *See* 12A C.J.S. *Burglary* § 24 (2004) ("In order to constitute burglary, it is not necessary that entry be made by any part of the accused's body, but entry may be made by an instrument . . . . It is necessary, however, that the instrument shall be put within the structure, and that it shall be inserted for the immediate purpose of committing the felony or aiding in its commission, and not merely for the purpose of making an opening to admit the hand or body, or, in other words, for the sole purpose of breaking."); 3 Wayne R. LaFave, *Substantive Criminal Law* § 21.1(b), at 210 (2d ed. 2003) ("If the actor instead used some instrument which protruded into the structure, no entry occurred unless he was simultaneously using the instrument to achieve his felonious purpose. Thus there was no entry where an instrument was used to open the building, even though it protruded into the structure; but if the actor was also using the instrument to reach some property therein, then it constituted an entry."); 3 Charles E. Torcia, *Wharton's Criminal Law* § 323, at 248-50 (15th ed. 1995) ("If, after a break, an instrument passes the line of the threshold, there is an entry only if such instrument is being used to commit the felony intended. . . . If, on the other hand, an instrument passes the line of the threshold merely in the course of the break, or to facilitate a subsequent entry of the defendant's person by making the opening wider, there is no entry."); Rollin M. Perkins & Ronald N. Boyce, *Criminal Law* at 254 (3d ed. 1982) ("[W]here a tool or other instrument is introduced without any part of the person being within the house, it is an entry if the insertion was for the purpose of completing the felony but not if it was merely to accomplish a breaking.").

Furthermore, North Carolina cases challenging the evidence of an entry are likewise consistent with this distinction. *Compare Gibbs*, 297 N.C. at 418-19, 255 S.E.2d at 174 (extension of the defendant's hand through broken window sufficient to establish entry by defendant's person), *and Sneed*, 38 N.C. App. at 231-32, 247 S.E.2d at 659-60

(defendant's leaning part of his body into a van sufficient to establish entry by defendant's person), *with Surcey*, 139 N.C. App. at 435-36, 533 S.E.2d at 481-82 (defendant's pushing the barrel of a shotgun through a broken windowpane of the victim's house and firing the gun for the purpose of inflicting injury on the victim inside his residence sufficient to establish entry by instrument). *See also State v. Bumgarner*, 147 N.C. App. 409, 415, 556 S.E.2d 324, 329 (2001) (evidence that defendant pulled a chair up to the victim's window, removed the screen from the window, and shot the victim in his bedroom sufficient to establish entry either by defendant's person or by defendant's pushing the gun through the window in order to shoot the victim inside).

In the present case, there is no evidence that any felony was attempted, much less accomplished, inside the residence by means of the instrument which crossed the threshold. Nor is there any evidence that defendant or any part of his person physically crossed the threshold of the residence. Rather, the evidence produced at trial unequivocally shows that after breaking the window with the end of the shotgun, defendant and Durant heard movement inside the residence and immediately fled the scene. The State relies on the simultaneous breaking and entering by the end of the shotgun into the window of the residence to support the burglary charge. However, our reading of the case law leads us to the conclusion that the fact that defendant broke a window of the residence in the nighttime with an instrument—even if the instrument itself crossed the threshold—is not sufficient to find him guilty of burglary. Thus, viewing the evidence in the light most favorable to the State, it appears only that defendant broke a window of the residence with an instrument to facilitate a subsequent entry. Such evidence does not support the trial court's submitting a case of burglary to the jury. It does, however, support a conviction for felonious breaking or entering. *See* N.C. Gen. Stat. § 14-54(a) (2009).

"Felonious breaking or entering is a lesser included offense of burglary. For conviction of felonious breaking or entering, a violation of G.S. 14-54(a), it is not necessary that the State show both a breaking and an entering; proof of either is sufficient if committed with the requisite felonious intent." *State v. Helton*, 79 N.C. App. 566, 569, 339 S.E.2d 814, 816 (1986) (citation omitted); *see also State v. Walton*, 90 N.C. App. 532, 533, 369 S.E.2d 101, 103 (1988) ("To support a conviction for felonious breaking [or] entering under G.S. § 14-54(a), there must exist substantial evidence of each of the following elements: (1)

the breaking or entering, (2) of any building, (3) with the intent to commit any felony or larceny therein." (emphasis added)). There is substantial evidence in the record to support a finding of each of these elements, as defendant concedes in his brief. Further, "[a]lthough the evidence is insufficient to sustain a conviction of first-degree burglary, the jury, in convicting defendant of first-degree burglary, necessarily found facts which establish felonious breaking [or] entering, i.e., the breaking [or] entering of a building with intent to commit any felony or larceny therein." *State v. Barnett*, 113 N.C. App. 69, 75-76, 437 S.E.2d 711, 715 (1993). Accordingly, " '[t]he verdict [guilty of first-degree burglary] *must* . . . be considered a verdict of felonious breaking [or] entering, a lesser degree of the crime of burglary, and a violation of G.S. 14-54(a) . . . .' " *Id.* at 76, 437 S.E.2d at 715 (alterations and omissions in original) (quoting *State v. Cox*, 281 N.C. 131, 136, 187 S.E.2d 785, 788 (1972)). We therefore vacate the judgment on defendant's first-degree burglary conviction (No. 09 CRS 227853) and remand the matter to the trial court "for the pronouncement of a judgment as upon a verdict of guilty of felonious breaking [or] entering." *Cox*, 281 N.C. at 136, 187 S.E.2d at 788.

### C. Common law robbery

**[2]** " 'Common law robbery is the felonious, non-consensual taking of money or personal property from the person or presence of another by means of violence or fear.' " *State v. Porter*, 198 N.C. App. 183, 186, 679 S.E.2d 167, 169-70 (2009) (quoting *State v. Smith*, 305 N.C. 691, 700, 292 S.E.2d 264, 270 (1982)). "For purposes of robbery, a 'taking' has occurred when 'the thief succeeds in removing the stolen property from the victim's possession.' " *State v. Patterson*, 182 N.C. App. 102, 107, 641 S.E.2d 376, 379 (2007) (quoting *State v. Sumpter*, 318 N.C. 102, 111, 347 S.E.2d 396, 401 (1986)). This Court has recognized "in the robbery context, that '[p]roperty is in the legal possession of a person if it is under the protection of that person.' " *Id.* (quoting *State v. Bellamy*, 159 N.C. App. 143, 149, 582 S.E.2d 663, 668 (2003)).

Defendant challenges the sufficiency of the evidence to support the element of a taking. Defendant argues there is no evidence defendant either asked Smith for the car or forced Smith out of the car. Defendant further argues there is no evidence that defendant ever had control of the car. However, as in *Patterson*, defendant's argument "disregards the existence of the gun" pointed at Smith when defendant forced Smith to drive defendant away in Smith's car. *Id.*

Here, Smith testified that defendant approached him, pointed a gun at him, ordered him to drive defendant across campus, and instructed him where to go. Defendant admitted to Detective Fish that he had used a BB gun pistol to take Smith's car, and a BB gun pistol was found in Smith's car after it crashed. Based on this evidence, the jury could reasonably conclude that Smith's car was no longer under his "protection," but had been relinquished by him to defendant, and that defendant was exercising complete control over the car from the time defendant pointed the gun at Smith and ordered Smith to drive him away in the car. *See Patterson*, 182 N.C. App. at 103, 107, 641 S.E.2d at 377, 379 (holding the State presented sufficient evidence of a taking by the defendant where the defendant approached the victim, pressed a handgun into her stomach, grabbed her purse from the passenger seat of her vehicle, subsequently threw the purse back onto the seat without removing anything, and fled the scene). The fact that Smith was still physically present in the car cannot negate the reasonable inference that defendant's actions were sufficient to bring the car under his sole control. Thus, the State presented sufficient evidence of a taking such that defendant's motion to dismiss the common law robbery charge was properly denied.

### III.  Plain error: admission of identification evidence

[3] Defendant's next argument on appeal is that the trial court committed plain error in admitting both the prior out-of-court identification and the in-court identification of defendant by Smith. Specifically, defendant contends the show-up procedure whereby defendant was shown individually to Smith while surrounded by police officers was so suggestive as to violate defendant's constitutional rights, and therefore, the testimony concerning both the out-of-court identification and the resulting in-court identification was plainly inadmissible.

Defendant did not object to the admission of the identification evidence at trial. Nonetheless, "defendant is entitled to relief . . . only if he can demonstrate plain error." *State v. Roseboro*, 351 N.C. 536, 552, 528 S.E.2d 1, 12 (2000). Plain error is "a fundamental error so prejudicial that justice cannot have been done." *State v. Haselden*, 357 N.C. 1, 13, 577 S.E.2d 594, 602 (2003). " 'In order to prevail under a plain error analysis, defendant must establish not only that the trial court committed error, but that absent the error, the jury probably would have reached a different result.' " *State v. Smith*, 201 N.C. App. 681, 686, 687 S.E.2d 525, 529 (2010) (quoting *State v. Steen*, 352 N.C. 227, 269, 536 S.E.2d 1, 25-26 (2000)).

Identification evidence violates a defendant's due process right "where the facts reveal a pretrial identification procedure so impermissibly suggestive that there is a very substantial likelihood of irreparable misidentification." *State v. Harris*, 308 N.C. 159, 162, 301 S.E.2d 91, 94 (1983). Our analysis of identification procedures for due process violations is comprised of two steps: "First, the Court must determine whether the pretrial identification procedures were unnecessarily suggestive. If the answer to this question is affirmative, the court then must determine whether the unnecessarily suggestive procedures were so impermissibly suggestive that they resulted in a substantial likelihood of irreparable misidentification." *State v. Fisher*, 321 N.C. 19, 23, 361 S.E.2d 551, 553 (1987).

Our Courts have noted that "show-up" procedures, "whereby a suspect is shown singularly to a witness or witnesses for the purposes of identification," are "inherently suggestive." *State v. Harrison*, 169 N.C. App. 257, 262, 610 S.E.2d 407, 412 (2005); *see also State v. Turner*, 305 N.C. 356, 364, 289 S.E.2d 368, 373 (1982). However, our Supreme Court has clarified that suggestive pretrial show-up identifications "are not *per se* violative of a defendant's due process rights." *Turner*, 305 N.C. at 364, 289 S.E.2d at 373. "Even though a pretrial identification procedure may be suggestive, it will be *impermissibly* suggestive only if all the circumstances indicate that the procedure resulted in a very substantial likelihood of irreparable misidentification." *Harris*, 308 N.C. at 164, 301 S.E.2d at 95.

"Whether a substantial likelihood exists depends on the totality of the circumstances." *Fisher*, 321 N.C. at 23, 361 S.E.2d at 553; *see also State v. Rawls*, ___ N.C. App. ___, ___, 700 S.E.2d 112, 118 (2010) ("When evaluating whether such a likelihood [of irreparable misidentification] exists, courts apply a totality of the circumstances test."). When evaluating the likelihood of irreparable misidentification, our Courts consider the following factors:

> "(1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation."

*State v. Pulley*, 180 N.C. App. 54, 64, 636 S.E.2d 231, 239 (2006) (quoting *Harris*, 308 N.C. at 164, 301 S.E.2d at 95). "In other words, a suggestive identification procedure has to be unreliable under a totality of

the circumstances in order to be inadmissible." *State v. Breeze*, 130 N.C. App. 344, 350, 503 S.E.2d 141, 146 (1998).

The show-up identification procedure used in the present case was not impermissibly suggestive. First, Smith had ample opportunity to view defendant at the time of the crime. Smith saw defendant approaching him across the parking lot, and noticed that defendant "looked very strange" and was "sweating really bad." Smith thought defendant's presence, as defendant approached Smith, was odd enough to immediately dial 911. Smith stood in the parking lot holding a conversation with defendant about where defendant was asking to go, while attempting to speak with both a 911 operator and his resident coordinator. Smith had further opportunity to view and interact with defendant when defendant pointed the gun at Smith and the two got into the car together. Smith's testimony indicates his attention was focused on defendant during the entire encounter. Further, there is no suggestion in the record, or by defendant in his brief, that the description given by Smith to the police officer of a black male, 5'10" tall, with medium build, was inaccurate in any way. In fact, Officer Greco testified that he detained defendant at gunpoint because defendant "fit the description of the individual [he was] looking for," which was provided to another officer by Smith and relayed by radio to Officer Greco.

During the show-up, Smith stood in close proximity to defendant, and defendant was illuminated by spotlights and Officer Greco's flashlight. Smith stated he was "sure" defendant was the perpetrator, both at the scene and in court. Finally, although no definitive timeline is given in the record, the testimony indicates that the length of time from the moment defendant approached Smith to the time Smith appeared at the show-up was relatively short, as the events appear to have transpired fairly rapidly. Thus, given the totality of the circumstances, the pretrial show-up identification was not impermissibly suggestive, and accordingly, the identification evidence was admissible at trial. In addition, "[s]ince the out-of-court identification was admissible, there is no danger it impermissibly tainted the in-court identification." *State v. Lawson*, 159 N.C. App. 534, 539, 583 S.E.2d 354, 358 (2003).

Even if Smith's testimony regarding the identifications of defendant as the perpetrator were inadmissible, defendant has failed to meet his burden under the plain error standard of review. Defendant mistakenly asserts in his brief that the burden is on the State to prove the admission of such evidence was harmless beyond a reasonable

doubt, as it violated his constitutional right to due process. Defendant would be correct, had he objected to the admission of the evidence on constitutional grounds at trial. *See* N.C. Gen. Stat. § 15A-1443(b) (2009) (placing burden on State to demonstrate alleged constitutional error is harmless beyond a reasonable doubt); *State v. Fowler*, 157 N.C. App. 564, 566, 579 S.E.2d 499, 501 (2003) (defendant's failure to object at trial and properly preserve constitutional issue for appeal limits review of potential constitutional error to plain error standard of review). However, absent objection, our review is limited to plain error under which defendant bears the burden of establishing not only that the trial court committed error, but that absent the error, the jury probably would have reached a different result. *Steen*, 352 N.C. at 269, 536 S.E.2d at 25-26.

Defendant cannot meet such a burden in this case. Even without Smith's identifications of defendant as the individual who approached him and commandeered his car, two different police officers—Detective Fish and Detective Stewart—testified at trial as to defendant's admission that he took Smith's car using a BB gun pistol, asked Smith to drive him away from the area, saw Smith jump out of the car while Smith was driving, and subsequently wrecked the car in the woods. Both officers testified that defendant was fully Mirandized when he made the statements to the officers, and defendant has not challenged the admissibility of his statements on appeal. Further, evidence was presented that a canine officer and his handler tracked a scent from the scene of the crash to defendant's location and alerted to defendant. Given this evidence, we fail to see how the jury would have returned a different verdict, even without the challenged identification evidence. Defendant has failed to show plain error on this issue.

## IV. Restitution

**[4]** Finally, defendant argues the trial court erred in ordering him to pay restitution for the Honda Accord automobile, as there was insufficient evidence to support the amount of restitution and the individual to whom the restitution should be paid. This Court reviews *de novo* the issue of whether the amount of restitution ordered by the trial court is supported by competent evidence adduced at trial or at sentencing. *State v. McNeil*, ___ N.C. App. ___, ___, 707 S.E.2d 674, 684 (2011).

" 'The amount of restitution ordered by the trial court must be supported by competent evidence presented at trial or sentencing.' "

*State v. Davis*, ___ N.C. App. ___, ___, 696 S.E.2d 917, 921 (2010) (quoting *State v. Mauer*, 202 N.C. App. 546, 551, 688 S.E.2d 774, 777 (2010)); *see also State v. Replogle*, 181 N.C. App. 579, 584, 640 S.E.2d 757, 761 (2007) ("It is uncontested that '[t]he amount of restitution recommended by the trial court must be supported by evidence adduced at trial or at sentencing.' " (alteration in original) (quoting *State v. Shelton*, 167 N.C. App. 225, 233, 605 S.E.2d 228, 233 (2004))). "In the absence of an agreement or stipulation between defendant and the State, evidence must be presented in support of an award of restitution." *State v. Buchanan*, 108 N.C. App. 338, 341, 423 S.E.2d 819, 821 (1992). Unsworn statements made by the prosecutor at sentencing " '[do] not constitute evidence and cannot support the amount of restitution recommended.' " *Replogle*, 181 N.C. App. at 584, 640 S.E.2d at 761 (alteration in original) (quoting *Buchanan*, 108 N.C. App. at 341, 423 S.E.2d at 821).

The record submitted by the parties did not include a copy of the restitution worksheet submitted by the prosecutor at sentencing. Nonetheless, the transcript of the proceedings reveals the prosecutor introduced documentation to the trial court that the car was titled in the name of Moses Blunt ("Blunt"), and that Smith had paid the amount of $3,790 to Blunt to purchase the car. The transcript indicates the prosecutor submitted both the title registration of the car, as well as a copy of the purchase receipt for the car, in support of these statements. Further, at trial, Smith testified that he had paid $3,790 to his roommate for the purchase of his car, although due to insurance issues, the car was still titled in his roommate's name. Although Smith did not identify the name of his roommate at trial, the prosecutor's introduction of the actual title registration of the car supports the fact that Moses Blunt was the title owner of the car, and that the car was worth $3,790 at the time of the transaction, which according to Smith's testimony, occurred shortly before defendant's actions in the present case. This evidence is sufficient to support the trial court's restitution award.

## V. Conclusion

We hold the trial court erred in denying defendant's motion to dismiss the charge of first-degree burglary, as the State failed to present sufficient evidence of entry. However, the evidence does support a conviction for felonious breaking or entering, as defendant concedes. Therefore, we vacate the trial court's judgment on defendant's first-degree burglary conviction and remand to the trial court for pro-

nouncement of judgment on the conviction of felonious breaking or entering, a violation of N.C. Gen. Stat. § 14-54(a).

We further hold the trial court properly denied defendant's motion to dismiss the common law robbery charge, as the State's evidence was sufficient to establish defendant took Smith's car by pointing a gun at Smith and commandeering the vehicle. Also, defendant failed to establish the trial court committed plain error in admitting both the out-of-court and in-court identifications of defendant by Smith, and the record evidence supports the trial court's restitution award.

No error in part; remanded for judgment in part.

Judges McGEE and STEELMAN concur.