DILLON, Judge, dissenting.
*296 Defendant was convicted of murder. On appeal, he argues that the trial court erred in allowing two eyewitnesses-Ms. Alvarez and Ms. Lopez-to offer testimony in court identifying Defendant as the shooter. Defendant contends that their testimonies were tainted by an unnecessarily suggestive pre-trial identification procedure by the prosecutor. Specifically, shortly before trial, the prosecutor met with Ms. Alvarez and Ms. Lopez and showed them a picture and video of Defendant, purportedly to aid their trial testimony. For the reasons stated below, I believe that Judge Roberson properly admitted the testimony of Ms. Alvarez, and that if it was error to admit Ms. Lopez's in-court identification, such error was harmless beyond a reasonable doubt. Therefore, my vote is "no reversible error."
Regarding Ms. Alvarez's testimony, assuming that her meeting with the prosecutor was impermissibly suggestive, Judge Roberson's findings show that Ms. Alvarez's in-court identification was of an origin independent from her meeting with the prosecutor. For example, evidence showed that Ms. Alvarez stood close to Defendant during the shooting and focused her attention on him, and she testified that she was sure that the shooter was Defendant-long before her meeting with the prosecutor-after seeing a picture of Defendant on the news shortly after the shooting. See State v. Fisher , 321 N.C. 19, 24, 361 S.E.2d 551, 554 (1987) (noting that a witness identification based on a newspaper photo does "not result from state action [and therefore does] not violate defendant's due process rights").
Regarding Ms. Lopez's testimony, I believe that any error committed in admitting her in-court identification was harmless beyond a reasonable doubt because the other overwhelming evidence showed that Defendant and his friend, Marquis Spence, were the two people who arrived in the blue car at the victim's house and participated in the shooting of the victim. Specifically, the overwhelming evidence shows as follows:
Several witnesses confirmed that two hours before the shooting, it was Defendant and Mr. Spence who arrived at the victim's house in Mr. Spence's distinctive blue car to pick up Skip (a friend of the victim's) to go to a nearby location to conduct a drug transaction; shortly thereafter, Defendant and Mr. Spence were seen leaving the nearby location *654 alone in the blue car after Skip left the location with their $1,200, but had failed to return with the drugs; and Defendant and Mr. Spence left the nearby *297 location shortly before two men arrived at the victim's house in a blue car looking for Skip, complaining that Skip had just run off with their $1,200.
Ms. Alvarez, who witnessed the shooting but did not know Defendant, positively identified Defendant as the shooter in court.
The victim himself , as evidenced by the testimony of Ms. Lopez, identified Defendant as a participant in his murder. The victim had seen Defendant and Mr. Spence pick up Skip from his house a few hours before two men came to his house and killed him. Ms. Lopez testified that the victim exclaimed that the two men who arrived up two hours later were the same two men who had come earlier to pick up Skip. Specifically, Ms. Lopez stated that when the two men arrived in the blue car looking for Skip and their $1,200, the victim told the two men that the last time he saw Skip, "he had left with you guys ." (Emphasis added.)
Another witness to the shooting who had seen Skip leave earlier with Mr. Spence and Defendant testified that when the two men pulled up two hours later looking for Skip, he "told them ... [w]herever you took him to, that's where you need to back trace him."
Other witnesses testified that Defendant and Mr. Spence were neighbors in Durham, spent a lot of time together, and were together at Mr. Spence's house with the blue car out front when they were arrested.
Defendant did not testify at trial.
Based on the evidence, the jury determined that the same two men who arrived at the victim's house in a blue car to pick up Skip to pay him $1,200 for drugs were the same two men who returned to the victim's house a few hours later in a blue car looking for Skip and complaining to the victim that Skip had taken their $1,200. I conclude that even if Ms. Lopez had not been allowed to identify Defendant in court, it is beyond a reasonable doubt that the jury still would have convicted Defendant based on all the other evidence. Her in-court identification merely corroborated the other evidence offered by the State. And if Ms. Lopez had not met with the prosecutor before the trial, there is no indication that Ms. Lopez would have testified that Defendant was not the shooter. Indeed, when she was shown a photo line-up by the police shortly after the shooting, she selected Defendant's photograph as identifying one of the two individuals involved in the victim's death, though she indicated that she was not sure.